**In re Ronald William DOLPH, Debtor.**

**Ronald William DOLPH,
Plaintiff–Appellee,**

v.

**PENNSYLVANIA HIGHER EDUCATION, ASSISTANCE AGENCY, Defendant-Appellant.**

**BAP No. 97–8091.**

United States Bankruptcy Appellate Panel of the Sixth Circuit.

Argued Dec. 3, 1997.

Decided Jan. 29, 1998.

Frederick S. Coombs, III, argued and on brief, Harrington & Mitchell, Youngstown, OH, for Defendant–Appellant.

Robert A. Ciotola, argued and on brief, Canfield, OH, for Plaintiff–Appellee.

Before RHODES, STOSBERG, and WALDRON, Bankruptcy Appellate Panel Judges.

## OPINION

The bankruptcy court determined that the student loan obligation of the Debtor–Appellee, Ronald William Dolph, was dischargeable under the "undue hardship" provision of 11 U.S.C. § 523(a)(8)(B). The Panel vacates the order discharging the student loans and remands the case for required factual findings.

## I. ISSUE ON APPEAL

Although the general issue on appeal is whether the Debtor's student loans are dischargeable under 11 U.S.C. § 523(a)(8)(B), the more specific issue presented is whether the bankruptcy court, applying the test approved in *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman )*, 25 F.3d 356 (6th Cir.1994), made sufficient factual findings to support its conclusions that the Debtor's circumstances are likely to persist for a significant portion of the repayment period and that the Debtor made a good faith effort to repay the loans.

## II. JURISDICTION AND STANDARD OF REVIEW

■ The Bankruptcy Appellate Panel has jurisdiction over final orders of the bankruptcy court pursuant to 28 U.S.C. § 158(c)(1) and Order No. 97–27 entered by the United States District Court for the Northern District of Ohio on July 9, 1997, *nunc pro tunc* January 1, 1997. An order determining that a student loan is dischargeable under § 523(a)(8) is a final order for purposes of appeal. *See, e.g., Cheesman*, 25 F.3d 356.

■ Whether a student loan imposes an undue hardship for purposes of § 523(a)(8) is a question of law reviewed de novo. *Cheesman*, 25 F.3d at 359. However, findings of fact made regarding the circumstances surrounding the Debtor's failure to repay the student loans are reviewed under the clearly erroneous standard. *In re Paolini*, Case No.

95–3516, 1997 WL 476515 at *3 (6th Cir. Aug. 19, 1997)[1]; *Brunner v. New York Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2nd Cir.1987).

■ Federal Rule of Bankruptcy Procedure 7052 makes Rule 52 of the Federal Rules of Civil Procedure applicable to adversary proceedings. Fed. R. Bankr.P. 7052. Rule 52(a) requires a bankruptcy court hearing an adversary proceeding to make findings of fact and conclusions of law. *Id.*

It is not necessary for the [Bankruptcy] Judge to prepare elaborate findings on every possible issue raised at trial. However, there must be findings, in such detail and exactness as the nature of the case permits, of subsidiary facts on which an ultimate conclusion can rationally be predicated. The findings should be explicit so as to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the grounds on which the trial court reached its decision.

*Orlett v. Cincinnati Microwave, Inc.*, 954 F.2d 414, 418 (6th Cir.1992) (citations omitted). "Where facts which will support a judgment can be inferred from a [trial] court's other findings, an appellate court will deem that such inferences were drawn." *Beal Bank, S.S.B. v. Jack's Marine, Inc.*, 201 B.R. 376, 381 (E.D.Pa.1996). However, where "the bankruptcy court's factual findings are silent or ambiguous as to an outcome determinative question," or where it is unclear how the bankruptcy court reached its conclusion such that the appellate court cannot provide an adequate review of the decision, the bankruptcy court's decision must be vacated and the case remanded for further factual determination. *Hardin v. Caldwell (In re Caldwell )*, 851 F.2d 852, 857 (6th Cir.1988). *See also In re 599 Consumer Electronics, Inc.*, 195 B.R. 244 (S.D.N.Y. 1996). An appellate court is limited to determining whether or not the record contains adequate findings by the bankruptcy court concerning determinative factual issues. *Caldwell*, 851 F.2d at 857–858.

---

1. "Although unpublished decisions of the Sixth Circuit are not binding precedent, they can be cited if persuasive, especially where there are no published decisions which will serve as well." *Belfance v. Black River Petroleum, Inc., (In re Hess )*, 209 B.R. 79, 82 n. 3 (6th Cir. BAP 1997).

835

## III. FACTS

Upon graduation from high school in 1983, Dolph enrolled in a university as a full time student. After several years, he transferred to a community college. Eventually, he transferred to another university, where he obtained bachelor degrees in marketing and management in May, 1990. Dolph's education was financed in part by the following student loans: $2,500 on November, 9, 1983; $2,500 on August 9, 1984; $2,500 on August 1, 1985; and $1,084 on February 5, 1987.

All of these loans were guaranteed by Pennsylvania Higher Education Assistance Agency (PHEAA). Dolph entered into a combined repayment plan. He was to repay the loans over 120 months, commencing April 1, 1991, at $109.48 per month.

After graduation from college, Dolph held a variety of jobs. He made the first 21 payments of $109.48 per month to PHEAA, through December, 1992. In August, 1991, Dolph was injured at work. Dolph testified that he was out of work approximately five years. During some of this time, Dolph received worker's compensation. He also received money from his parents in exchange for "helping them out" with their businesses. Dolph did not report the receipt of these funds as income on his tax returns. Commencing January, 1993, Dolph applied for and received three consecutive deferments on his obligations to PHEAA covering the period October, 1991 through April 5, 1996. Dolph repeatedly certified to PHEAA that he was "temporarily totally disabled" during the deferment period.

Once Dolph had received the maximum allotted worker's compensation benefits, he became employed. Dolph held at least four jobs from 1995 to 1996. In March, 1995, Dolph worked as a route salesman for a food delivery service, earning approximately $10,000 during the 20 weeks he was employed. In September, 1995, Dolph accepted an assistant manager position with a truck-washing company. Dolph left this company after his position was changed from salaried to hourly and he was not guaranteed any minimum hours. In February, 1996, Dolph became an assistant manager with a furniture rental store. However, he was laid off after only one week on the job.

Dolph testified that he then commenced an extensive job search throughout 1996 and eventually obtained a job with a car rental agency in November, 1996. There was conflicting testimony regarding whether Dolph attended a regional job fair on September 18, 1996, as part of his job search. PHEAA presented an expert witness at trial who testified that Dolph had not conducted an effective job search, and that Dolph could have found a better job if he had done an effective job search.

Dolph filed a petition under Chapter 7 on April 15, 1996. On October 17, 1996, Dolph filed an amended complaint against PHEAA seeking a determination that his student loans were dischargeable under 11 U.S.C. § 523(a)(8)(B). On July 31, 1997, the bankruptcy court entered its Memorandum Opinion and Order determining that the student loans were dischargeable under the "hardship exception."

## IV. DISCUSSION

Student loans are generally nondischargeable in bankruptcy. However, a student loan is dischargeable if the debtor qualifies under the "hardship exception." Section 523 provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

. . . .

(B) excepting such debt from discharge under this paragraph will im-

pose an undue hardship on the debtor and the debtor's dependents[.]

11 U.S.C. § 523(a)(8)(B).

■ A debtor seeking discharge of a student loan debt under § 523(a)(8)(B) bears the burden of proving that he qualifies for the "hardship discharge." *Berthiaume v. Pennsylvania Higher Educ. Assistance Auth.* (*In re Berthiaume*), 138 B.R. 516, 520 (Bkrtcy. W.D.Ky.1992). There are several tests for determining whether a debtor qualifies under § 523(a)(8)(B). *Cheesman*, 25 F.3d at 359. *See also Brunner*, 831 F.2d at 396; *Andrews v. South Dakota Student Loan Assistance Corp.* (*In re Andrews*), 661 F.2d 702, 704 (8th Cir.1981). In *Cheesman*, the Sixth Circuit did not adopt the *Brunner* test, and noted "the bankruptcy court did not state which test it used to determine that the Cheesmans' loans imposed an undue hardship." *Cheesman*, 25 F.3d at 359. The Sixth Circuit did, however, employ the *Brunner* test in determining *Cheesman*, but has not formally adopted any test for the determination of the dischargeability of student loans. *See, e.g., Cheesman*, 25 F.3d at 359; *Paolini*, Case No. 95–3516, 1997 WL 476515 (6th Cir. Aug. 19, 1997).

■ In the present case, the bankruptcy court used the *Brunner* analysis to determine that Dolph's student loan debt was dischargeable under § 523(a)(8)(B). The overwhelming majority of cases to consider the *Brunner* test have adopted its application. *See, e.g., In re Roberson*, 999 F.2d 1132 (7th Cir.1993); *Queen v. Pennsylvania Higher Educ. Assistance Agency*, 210 B.R. 677 (E.D.Pa.1997); *Odom v. Columbia Univ.*, 906 F.Supp. 188 (S.D.N.Y.1995). The *Brunner* test considers not only the debtor's current ability to repay the loans, but also the likelihood that the debtor will have the ability to repay the loans in the future. *Brunner*, 831 F.2d at 396. It is clear that Congress intended to make discharge of a student loan more difficult to discharge than other types of debt, although not impossible. Congress enacted § 523(a)(8)(B) "to remedy an abuse by students who, immediately upon graduation, filed petition for bankruptcy and obtained a discharge of their educational loans." *Andrews Univ. v. Merchant* (*In re Merchant*), 958 F.2d 738, 740 (6th Cir.1992). The *Brunner* test, used by the bankruptcy court and argued by the parties in this appeal, accomplishes the Congressional intent of § 523(a)(8)(B). In the absence of the adoption of a specific test by the Sixth Circuit, this Panel holds that the *Brunner* test, as restated by the Sixth Circuit in *Cheesman*, is an appropriate test to apply in adversary proceedings regarding the dischargeability of student loans.

The *Brunner* test, as restated in *Cheesman*, requires the debtor to demonstrate:

(1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period …; and (3) that the debtor has made good faith efforts to repay the loans.

*Cheesman*, 25 F.3d at 359.

## A. Dolph is not capable of repaying the loans while maintaining a minimal standard of living.

The first part of the test requires an analysis of whether the debtor is "capable of paying the loans while maintaining a minimal standard of living." *Cheesman*, 25 F.3d at 359. PHEAA does not challenge the finding that Dolph meets the first part of the test. Dolph presented evidence that, at present, the monthly household expenses exceed the monthly household income by approximately $500. Dolph has no substantial assets to sell to repay the loan. Both Dolph and his wife testified that the only portion of their budget that could possibly be adjusted was the amount allocated to food. The bankruptcy court's sufficiently detailed and specific findings that the first part of the test is met are not clearly erroneous.

## B. The bankruptcy court's factual findings regarding whether additional circumstances exist to indicate that Dolph's inability to repay the loans without undue hardship to his family is likely to persist are ambiguous, and do not afford an adequate basis for appellate review.

Under the second part of the test, the court must determine "that additional cir-

cumstances exist indicating that [the debtor's inability to repay the loans without undue hardship to his family] is likely to persist for a significant portion of the repayment period." *Cheesman,* 25 F.3d at 359.

PHEAA argues that Dolph did not conduct an effective job search. Furthermore, PHEAA asserts that Dolph could have a better job, and therefore that Dolph would have the ability to repay the loans if he would simply conduct an effective job search. PHEAA argues that Dolph did not carry his burden of proof on the second part of the test.

The bankruptcy court heard considerable evidence about Dolph's efforts to obtain employment. Dolph testified that he sent out approximately 200 resumes before he obtained his current position with the car rental agency. The court also heard testimony from an expert witness, called by PHEAA, who testified that Dolph had not conducted an effective job search.

 It should be noted that, throughout the trial proceedings and during this appeal, both parties frequently used the phrase "effective job search," apparently to mean "successful job search," i.e., a job search that resulted in employment or higher paying employment. *Cheesman* does not require the Debtor to conduct such a job search. In *Cheesman,* the debtors' job search did not result in higher paying employment; nevertheless, the court of appeals sustained the bankruptcy court's discharge of their student loans. The debtor's job search and the results of such a search, however characterized, are simply factors, among all other relevant factors, that the bankruptcy court would consider in applying the second part of the *Cheesman* test.

In this case, the bankruptcy court stated, "It is probable, based on [the expert's] testimony, that she could have found more meaningful employment for [Dolph] than he himself has been able to find." *Dolph v. Pennsylvania Higher Educ. Assistance Agency (In re Dolph),* Case No. 96–40752, Adv. No. 96–4092, slip op. at 17 (Bankr. N.D.Ohio July 31, 1997). However, the court found that "[a] lack of skill at obtaining optimum employment does not require

that [Dolph] be penalized with a finding of nondischargeability where other factors suggest the contrary result. All in all, it appears [Dolph] has made honest, albeit inept, efforts to find better employment." *Id.* at 18. That finding suggests that the bankruptcy court only considered Dolph's job search under the third part of the *Cheesman* test, regarding good faith. Although the efforts associated with the job search could be a component in the debtor's "good faith efforts to repay the loans," *Cheesman,* 25 F.3d at 359 (quoting *Brunner,* 831 F.2d at 396), the appropriateness of Dolph's job search is more relevant to the factual finding regarding the second part of the *Chessman* test, that additional circumstances exist to indicate that Dolph's financial situation is likely to persist. The Panel concludes that it is simply unclear to what extent and under what branch of the *Cheesman* test the bankruptcy court considered this evidence.

Where a trial court has failed to make a specific finding of a determinative fact, but has made findings from which the determinative fact can be inferred, an appellate court will deem the trial court to have inferred the determinative fact from its other findings. *See, e.g., Beal Bank,* 201 B.R. at 381. However, where a trial court has made no findings or its findings are ambiguous, an appellate court must remand the case for further factual determination. *Caldwell,* 851 F.2d at 857. *See also Orlett,* 954 F.2d at 418.

Because the bankruptcy court's findings are ambiguous, the Panel must remand the case for further factual determinations. The court stated that a professional career counselor would be able to obtain a better job for Dolph. The court also stated that there was no likelihood that Dolph would be able to afford to make any payments on the loan in the reasonably foreseeable future without substantial hardship to his family. "[Dolph] presently does not have, nor will he in the reasonably foreseeable future, sufficient saleable assets or disposable income which can be applied toward repayment of the loans, absent sacrifice to the immediate needs of his family." *Dolph,* slip op. at 19. The bankruptcy court found that "[t]he question of what [Dolph's] future holds in store for

him—be it a new and better job or be it a promotion with his present employer—is unknown, and any immediate evaluation of the likelihood for positive change in [Dolph's] present or future financial circumstances is speculative and not a firm basis for the Court to reach a decision." *Id.* at 21.

The second part of the *Cheesman* test requires a finding that Dolph established by a preponderance of the evidence that *additional circumstances* exist which make it likely that the Debtor's inability to repay will persist. The bankruptcy court's ambiguous findings are inadequate to support this conclusion. Therefore, this Panel must remand for clarification of the bankruptcy court's findings on the second prong of the *Cheesman* test.

### C. The bankruptcy court was silent regarding whether Dolph made a good faith effort to repay the loans.

The final part of the test examines the Debtor's good faith in attempting to repay the student loans. *Cheesman*, 25 F.3d at 360. In *Brunner*, the court determined that the debtor had not made a good faith effort at repayment when she sought discharge of her student loans within a month of their becoming due and without even requesting a deferment of payment. *Brunner*, 831 F.2d at 397. In *Cheesman*, the Sixth Circuit noted that, unlike *Brunner*, the debtor did not seek discharge of the student loans shortly after they became due. *Cheesman*, 25 F.3d at 360 (citing *Brunner*, 831 F.2d at 397.) The Sixth Circuit also noted that "[t]he Cheesmans made minimal payments on their loans several years after their loans became due and at least a year before filing for bankruptcy." *Cheesman*, 25 F.3d at 360. Mrs. Cheesman had been a teacher's aide prior to her maternity leave. When she reapplied, she was informed that her prior position had been eliminated. Mrs. Cheesman then received unemployment compensation while she attempted to find new employment. Mr. Cheesman had held various positions as a teacher working with "troubled youth." *Id.* at 358. The court found that the Cheesmans had exhibited a good faith effort to repay the student loans, even

though the Cheesmans' "job search" did not produce different or better paying jobs for them.

In the present case, Dolph made 21 of 120 payments. Dolph was granted deferments on his obligations because he certified to PHEAA that he was "temporarily totally disabled". The deferments covered payments for October, 1991, through April 5, 1996. Dolph filed bankruptcy on April 15, 1996. As in *Cheesman*, Dolph did not seek to discharge his student loans shortly after they became due.

PHEAA asserts that Dolph worked at his parents' companies and did not disclose the receipt of any income he received to the IRS. During the same time period that Dolph received these funds, he was also receiving worker's compensation and deferments due to his alleged "temporary total disability." PHEAA argues that Dolph's failure to make his student loan payments from available funds and his multiple certifications that he was "temporarily totally disabled" to obtain deferments of his required payments constituted false pretenses proving Dolph lacked the good faith required under the third part of the *Cheesman* test. PHEAA raised a serious question with regard to Dolph's financial circumstances and disclosures in connection with the deferments he obtained. The bankruptcy court's decision is silent concerning the issue of good faith. Therefore, this Panel must remand this case for the required findings on the third branch of the *Cheesman* test.

## V. CONCLUSION

The order holding that the student loan is dischargeable is **VACATED.** The case is **REMANDED** with instructions that the bankruptcy court clarify its findings regarding whether additional circumstances exist that indicate Dolph's financial condition will persist and make specific factual findings regarding whether Dolph made a good faith effort to repay his student loans.