**In re Patricia Ann PANTELIS, Debtor.**

**Patricia Ann Pantelis, Plaintiff,**

**v.**

**Kent State University, et al., Defendants.**

Bankruptcy No. 98–61631.
Adversary No. 98–6226.

United States Bankruptcy Court,
N.D. Ohio.

Dec. 31, 1998.

Donald R. Little, Canton, OH, for Debtor.

Robert B. Trattner, Brouse & McDowell, Akron, OH, for USA Funds.

Jill Freshley Otto, Day, Ketterer, Raley, Wright & Rybolt, Ltd., Canton, OH, for Nebraska Student Loan Program.

## MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Bankruptcy Judge.

Pending before the Court is a Complaint filed by the Plaintiff, Patricia Ann Pantelis (Debtor), to determine the dischargeability of certain educational loans. The Nebraska Student Loan Program (Nebraska Program) and United Student Aid Funds, Inc. (USA Funds) filed answers seeking a dismissal of the Debtor's Complaint and other relief. A trial was conducted and the matter was taken under advisement. For the reasons that follow, the Debtor's prayer for relief will be **DENIED.**

### FACTS

On October 25, 1988, the Debtor executed a promissory note in favor of The Bank of

Horton in the principal amount of $2,000.00 with a variable interest rate of 10.47 per annum. The loan was disbursed to the Debtor in two payments of $1,000.00 each on November 29 and December 28, 1988, to attend Southern Ohio College in Akron, Ohio. The Debtor obtained a degree from that school to practice as a medical assistant. The Nebraska Program is the guarantee agency for the note. It has paid under the terms of its guaranty, and the note has been endorsed and assigned to it. The unpaid principal, interest, and collection costs as of October 1, 1998, were $5,840.78, together with interest of 8.68% per annum. The Debtor testified that she has not made any payments on this note.

In addition to her studies at Southern Ohio College, the Debtor also attended Bohecker's Business College in Ravenna, Ohio, from 1991–1993 and Kent State University in 1991. The Debtor obtained an Associates degree in Accounting from Bohecker's but failed out of Kent State University after one year. During this period, the Debtor obtained a deferral from the Nebraska Program for payment on its note. To finance her education at Bohecker's and Kent State, the Debtor obtained additional student loan funds. USA Funds is the guarantee agency on the note evidencing this loan. USA Funds supplied an Affidavit indicating that the Debtor obtained an educational loan on August 15, 1997, for $8,597.18 at a fixed interest rate of 9.00% per annum. USA Funds has paid under the terms of its guaranty and the note has been assigned to it. As of November 20, 1998, the total balance including principal and interest owed to USA Funds was $9,395.19. The Debtor testified that she has also not made any payments on this note. All exhibits offered by the defendant loan agencies were received in evidence without objection.

On May 27, 1998, the Debtor and her husband, Louis Pantelis, filed a petition for relief under Chapter 7 of Title 11 of the United States Code. The schedules accompanying the petition reflect total unsecured debts of $31,580.55, most of which involve medical bills and $13,696.11 allocated for the Debtor's student loan obligations. The Debtor did not list any secured or priority obligations in her schedules. On August 25, 1998, the Debtor filed the present adversary action to determine the dischargeability of her student loan obligations evidenced by the notes held by the Nebraska Program and USA Funds, asserting that, pursuant to 11 U.S.C. § 523(a)(8)(B), failure to discharge these obligations would impose an undue hardship on the Debtor and her dependents.[1] The Nebraska Program has counterclaimed for a determination that the attorney's fees and collection costs relating to its loan are also nondischargeable.

The Debtor is currently 45 years old and claims she is suffering from carpal-tunnel syndrome and back pain which prevent her from obtaining full-time employment. However, the Debtor did not provide any medical documentation regarding carpal-tunnel syndrome or tendinitis, of which she also complained. The Debtor has stated that she was last employed part-time in April, 1998, and has no job prospects. *See, Defendant, USA Funds, Inc.'s First Set of Interrogatories to Plaintiff,* Exhibit C, at p. 5. The Debtor testified that she has never worked full-time in any position since obtaining her medical assistant and accounting degrees. The positions which the Debtor has held in the past five years were all part-time and included such occupations as a tax preparer, cashier, and general office worker. *See, Defendant, USA Funds, Inc.'s First Set of Interrogatories to Plaintiff,* Exhibit C, at p. 7. As a result, the Debtor claims that she has made no more than $5,000.00 in any one year.

It was also determined at trial that the Debtor is currently separated from her husband and receives $190.00 per month in support for her two children. The Debtor claims that both children suffer from attention-deficit disorder which requires constant attention although no medical documentation concerning that diagnosis was presented. The Debtor currently is receiving public assistance in the form of food stamps and medical cards for both herself and her chil-

---

1. The Complaint named only Patricia Pantelis as the Plaintiff. The Court therefore assumes that the co-debtor, Louis Pantelis, is not a party to this action.

dren. The Debtor and her children currently live at her parents' residence where she is not required to pay rent. It was also determined at trial that the Debtor's children receive their education at home from the Debtor. As a result, the Debtor claims that she cannot obtain full-time employment due to her physical condition and her children's at-home schooling. The Debtor testified that she has tried to find employment as a medical assistant and accountant but has been unsuccessful. She claims that she has sent out numerous résumés but no record was provided as to résumés were sent. Lastly, the Debtor reports typical monthly expenses totaling $687.00 against monthly net income of $570.00, including $150.00 per month for rent which, as noted above, is not being paid.

### DISCUSSION

The Court has jurisdiction in this adversary proceeding by virtue of Section 1334(b) of Title 28 of the United States Code and General Order No. 84 entered in this district on July 16, 1984. This is a core proceeding under Section 157(b)(2)(I) of Title 28 of the United States Code. This Memorandum of Decision constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### Dischargeability under 11 U.S.C. § 523(a)(8)(B)

Pursuant to 11 U.S.C. § 523(a)(8)(B), a debt for an educational loan "made, insured, or guaranteed, by a governmental unit, or made under any program funded in whole or in part by a governmental unit or non-profit institution," is nondischargeable unless "such loan ... first became due before more than seven years ... before the date of the filing of the petition" or unless "excepting such debt from discharge would impose an undue hardship on the debtor and the debtor's dependents." It is undisputed that the notes in this case are subject to 11 U.S.C. § 523(a)(8). It is also undisputed that the notes became due less than seven years before the date of the Debtor's petition. Thus, the Debtor must prove that the repayment of these notes would constitute an undue hardship to discharge these obligations.

The Bankruptcy Appellate Panel for this Circuit has held that the test adopted by the Second Circuit Court of Appeals in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395, 396 (2d Cir. 1987), is the appropriate standard to apply in adversary proceedings regarding the dischargeability of student loans. *See, Dolph v. Pennsylvania Higher Education Assistance Agency (In re Dolph)*, 215 B.R. 832, 836 (6th Cir. BAP 1998). The *Brunner* test was approved, but not adopted by, the Sixth Circuit Court of Appeals in *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356 (6th Cir.1994). The *Brunner* test, as restated in *Cheesman*, requires a debtor to demonstrate:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;

(2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period ...; and

(3) that the debtor has made good faith efforts to repay the loans.

*Dolph*, 215 B.R. at 836 (citations omitted). The Sixth Circuit has also held that a bankruptcy court may also consider "the amount of the debt ... as well as the rate at which interest is accruing" and "the debtor's claimed expenses and current standard of living, with a view toward ascertaining whether the debtor has attempted to minimize the expenses of himself and his dependents." *Rice v. United States (In re Rice)*, 78 F.3d 1144, 1149 (6th Cir.1996).

Applying these standards, the Court finds that the Debtor is not entitled to discharge her student loans on the basis that the repayment of these loans would constitute an undue hardship. Were the inquiry limited to the circumstances as they existed at bankruptcy, the Debtor has likely established that she is currently unable to maintain a minimal standard of living absent a discharge of her student loans. Her current monthly income as listed in her petition is $570.00. However, that figure includes her

husband's monthly income of $300.00. The Debtor testified that she is currently separated from Mr. Pantelis. Thus, the Debtor's current monthly income is at best $290.00.[2] Alternatively, the Debtor lists current monthly expenses in her petition of $687.00 which seem reasonable except for the $150.00 per month budgeted for rent which the Debtor testified she does not pay because she lives with her parents. After deducting this figure, the Debtor's monthly expenses amount to $537.00, which far exceeds her current monthly income. Further, the Debtor testified that she has not been employed since April, 1998, and is receiving food stamps and has medical cards for herself and her children. Upon these facts, it is clear that the Debtor cannot currently maintain a minimal standard of living if forced to repay her student loans.

The Court, however, finds that the Debtor has not met her additional burden of proving that she will have insufficient financial resources for the foreseeable future to meet her living expenses as well as her student loan obligations. In *Dolph,* the Panel held that "[t]he appropriateness of [Dolph's] job search is more relevant to the factual finding ... that additional circumstances exist to indicate that [Dolph's] financial situation is likely to persist." *Dolph,* 215 B.R. at 837. The Court finds that the Debtor has not conducted an effective job search considering her marketability in two areas of potential employment. It is undisputed that the Debtor received professional degrees in both accounting and as a medical assistant. In the past five years, however, the Debtor has held only part-time positions performing such duties as a tax preparer, a cashier, and an office assistant. The Debtor testified that she has never held full-time employment. When questioned by counsel for the Nebraska Program as to whether she had attempted to find employment as a medical assistant, the Debtor replied that when she graduated from the Southern Ohio College in 1989 with her degree as a medical assistant, she only once attempted to find employment through that institution's placement office.

The Debtor testified that she has sent résumés to numerous locations but could not document where these résumés were sent. She further testified that in the past year, she has applied for ten positions with only three of those being as a medical assistant and two as an accountant. The Debtor also admitted that she has not recently applied for any positions through temporary agencies. Accordingly, the Court finds that although the Debtor's present income is minimal, her current financial situation is not likely to continue over the repayment periods on these loans if she obtains full-time employment.

The Debtor claims she is unable to obtain full-time employment based upon her physical condition and her need to remain at home with her children. The Debtor's physicians submitted reports that her disability range is approximately 10% and, thus, she is not unable to obtain full-time employment. *See,* USA Funds, Inc.'s Exhibits E & F. One of the physicians also stated in his report that the Debtor "has not followed our recommended treatment program" to alleviate her back pain. *See,* USA Funds, Inc.'s Exhibit E. Additional evidence of the Debtor's ability to obtain employment is provided through the denial of Supplemental Security Income benefits by the Social Security Administration on the basis that the Debtor's physical condition is not severe enough to preclude her from obtaining full-time employment. *See,* USA Funds, Inc.'s Exhibit H. The Debtor claims she suffers from carpal-tunnel syndrome and has recently begun to see a physician for this condition. The Debtor, however, has failed to provide any medical documentation concerning this condition and whether this condition would prevent her from obtaining full-time employment.

The Debtor also claims that she cannot obtain full-time employment because her children suffer from attention-deficit disorder. No medical documentation has been submitted to support this claim. The Debtor also testified that her children are educated

---

**2.** This includes the $190.00 per month the Debtor admits to receiving in child support for her dependent children.

at home which requires her presence during the day and limits any prospects for employment. The Court, however, finds that the choice of home schooling by the Debtor is voluntary and may not be used as an excuse to prevent her from obtaining full-time employment. In fact, it may be beneficial to place the children in public school where professional assistance may be available if they indeed suffer from attention-deficit disorder. In short, the Court finds that, based upon the evidence presented, the Debtor has made minimal attempts to find employment and it cannot find that she is incapable of obtaining full-time employment as a medical assistant or accountant to repay her student loans over the repayment period.

Furthermore, the Court also concludes that the Debtor has failed in attempting to make a good faith effort to repay her student loans. In *Cheesman,* the Sixth Circuit found that the debtors in that case exhibited good faith by making "minimal payments on their loans several years after their loans became due and at least a year before filing for bankruptcy." *Cheesman,* 25 F.3d at 360. In this case, the Debtor has admitted that she has failed to make any payments on either loan obtained from the defendants. This is the case even though the loan obtained from the Nebraska Program was made in 1988. Furthermore, although the Debtor may have consolidated her loan with USA Funds in 1997, the fact remains that the Debtor has failed to make a single payment on this note. *See, Healey v. Massachusetts Higher Education (In re Healey),* 161 B.R. 389, 397 (E.D.Mich.1993) (finding debtor's attempt to discharge debt without first seeking to negotiate a payment arrangement with the lender evidenced bad faith). Accordingly, the Court finds that the Debtor has failed to carry her burden in proving, by a preponderance of the evidence, that circumstances will prevent her financial condition from improving in the future or that she has acted in good faith. Therefore, the Court finds that the Debtor's student loans at issue are nondischargeable.

■ Both the Nebraska Program and USA Funds seek a determination that their respective attorney's fees and collection costs are also nondischargeable. Because the Court has found the debts to be nondischargeable, it is not unreasonable to provide reimbursement to the respective loan programs for their costs in defending this action. The Nebraska Program submits that the unpaid principal, interest, and collection costs due under its note as of October 1, 1998, is $5,840.78 with interest accruing at 8.68% per annum. USA Funds has submitted that the unpaid principal and interest due under its note as of November 20, 1998, is $9,395.19 with interest accruing at 9.00% per annum. At the Court's request, USA Funds has also submitted evidence of its attorney fees incurred in this action which amount to a total of $2,225.35. The Court has examined the charges rendered by counsel and finds them to average approximately $90.00 per hour, not unreasonable by any standard with which the Court is familiar.

Accordingly, the Court will enter judgment against the Debtor in those respective amounts. An Order in accordance with the foregoing shall issue forthwith.