**In re Laura Ann YOUNG, Debtor.**

**Laura Ann Young, Plaintiff,**

v.

**Education Financial Services, Inc., et al. Defendants.**

**Bankruptcy No. 98–63239. Adversary No. 98–6292.**

United States Bankruptcy Court, N.D. Ohio.

July 7, 1999.

Edwin Breyfogle, Massillon, OH, Counsel for Debtor.

Steven Schwartz, Canton OH, Robert Trattner, Brouse & McDowell, Akron, OH, R. Scott Moore, Lewis, Rice & Fingersh, St. Louis, MO, Counsel for Defendants.

## MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Bankruptcy Judge.

Pending before the Court is a Complaint filed by the Plaintiff, Laura Ann Young (Debtor), to determine the dischargeability

of certain educational loans. The Education Resources Institute (TERI), United Student Aid Funds, Inc. (USA Funds), and Logan College of Chiropractic, Inc. (Logan College) filed answers seeking a dismissal of the Debtor's Complaint and other relief. A trial was conducted and the matter was taken under advisement. For the reasons that follow, the Debtor's prayer for relief will be DENIED.

### FACTS

The Debtor completed her studies in chiropractic at Logan College in December, 1992. The Debtor also holds a Bachelor of Science degree in Biology from the University of Southern Indiana. She is licensed as a chiropractor in Ohio, Indiana, and Missouri. In order to finance her education, the Debtor borrowed funds from various lenders to whom she testified that she now owes approximately $60,-000.00. USA Funds is a guaranty agency on some of the notes.[1] USA Funds supplied an Affidavit indicating that it has paid under the terms of the guaranty and the notes have been assigned to it. As of April 23, 1999, the total balance including principal and interest owed to USA Funds was $47,661.37. *See,* USA Funds, Inc.'s Exhibit E.

On December 23, 1992, the Debtor also borrowed $5,806.00 from TERI at a variable interest rate which, on the date of the loan, was 18.09% per annum. Once repayment on the note commenced, the interest rate was reduced to 8.00% per annum. TERI has admitted in its Answer the allegation in the Debtor's Complaint that it is owed approximately $6,497.93. Logan College has also admitted in its Answer the allegation that it is owed $5,972.28 as of the petition date. The Debtor testified, and her exhibits support, that she made substantial payments on these notes. *See,* Debtor's Exhibit # 7. All exhibits offered by the Debtor and the defendant loan

agencies were received in evidence without objection.

Upon graduation, the Debtor accepted a position in Bowling Green, Missouri, as an associate chiropractor with her aunt who had her own practice. The Debtor worked with her aunt from January, 1993, through July, 1993. The Debtor stated that she accepted the position believing that her aunt would eventually sell her the practice. Upon considering the costs of such an investment, the Debtor decided against purchasing her aunt's practice and instead moved to Evansville, Indiana to live with her parents.

Upon her return to Indiana, the Debtor borrowed approximately $35,000.00 and opened her own chiropractic office. She shared space and equipment with another chiropractor. The Debtor testified that her practice was not doing well because of a lack of capital to advertise and the town's perception of chiropractors. As a result, the Debtor testified that in a good month, her practice would yield gross receipts of $2,000.00. The Debtor operated this practice from October, 1993, through October, 1995. Her 1993 federal income tax return revealed business losses of $6,561.00 while her gross income was merely $17,580.00. *See,* Debtor's Exhibit # 1. In 1994, the Debtor's business reported a loss of $8,732.00 with gross receipts of only $6,790.00. *See,* Debtor's Exhibit # 2. Further, for the nine months the Debtor operated her practice in 1995, she reported a loss of $2,172.00 on gross receipts of $18,948.00.

The Debtor testified that she closed the office in Indiana after being offered an associate chiropractic position with Tuscarawas Valley Back & Neck Clinic in New Philadelphia, Ohio. There she was paid $500.00 per week plus $5.00 per patient visit. The Debtor stated that she worked between 50–60 hours per week at this position and was given additional duties by her

---

1. USA Funds has indicated that it has purchased the Debtor's student loans from the original lenders, Education Financial Services and Sallie Mae. The loan documents provided by USA Funds indicate that the interest rates charged on these loans is 8.00% per annum.

supervisor which she refused to perform. Her supervisor later fired her for not performing these duties. Prior to accepting employment, the Debtor signed a non-competition agreement affecting the surrounding area which lasted from May, 1996, through May, 1998. In 1996, the Debtor reported that she received a salary of $32,-395.00 for the five months that she worked in New Philadelphia, Ohio. The Debtor then returned to Indiana to find employment but was unsuccessful. She later returned to Dover, Ohio but was only able to find a vacation position in Cuyahoga Falls, Ohio, which lasted from July, 1996 through August, 1996. The Debtor admitted that a permanent job offer was discussed but she did not like the way treatment was conducted at this practice.

From January, 1997, through May, 1997, the Debtor was employed at The Back & Neck Institute in Sandusky, Ohio where she was paid $600.00 per week and worked over forty hours per week. The Debtor testified that she did not remain at this position because her employer was being investigated for fraud. She reported income of $10,835.00 for those months. *See,* Debtor's Exhibit # 5. For the remainder of 1997, the Debtor accepted a position as a waitress at Dutch Harvest Restaurant in Berlin, Ohio, where she remains presently employed. The Debtor reported gross income in 1998 of $15,523.43 from her waitressing position and any fill-in positions she could obtain as a chiropractor. *See,* Debtor's Exhibit # 6. The Debtor testified that she is required to pay approximately $217.00 per month to maintain her chiropractic license, malpractice insurance, and to attend seminars.

On October 7, 1998, the Debtor filed a petition for relief under Chapter 7 of Title 11 of the United States Code. The schedules accompanying the petition reflect total unsecured debts of $95,912.36, which consist entirely of credit card and student loan obligations. The Debtor listed an x-ray machine lease as a secured obligation but testified that this lease has now expired.

The Debtor did not list any priority claims in her petition. On December 16, 1998, the Debtor filed the present adversary action to determine the dischargeability of her student loan obligations evidenced by the notes held by USA Funds, TERI, and Logan College, asserting that, pursuant to 11 U.S.C. § 523(a)(8)(B), failure to discharge these obligations would impose an undue hardship.

The Debtor is currently 31 years old and, as noted, is employed full-time as a waitress earning $2.15 per hour plus tips. The Debtor has been so engaged since September, 1997. *See,* USA Funds, Inc.'s, First Set of Interrogatories to Plaintiff, Exhibit B, at Interrogatory # 11. Schedule I, Current Income of Individual Debtors, lists the Debtor's current monthly income at $1,400.00 but her 1998 federal income tax return reveals that she only made $9,463.43 in gross wages and $6,060.00 from her chiropractic fill-in work. The Debtor, in Schedule J, Current Expenditures of Individual Debtors, lists monthly expenses of $1,762.71 but testified that her current monthly expenses are $750.00. The Debtor has been married for approximately one year. The Debtor has no medical conditions which would preclude her from obtaining full-time employment. She has no dependents. She currently resides with her husband at his home which is his sole property pursuant to an antenuptial agreement which the Debtor signed prior to their marriage. *See,* USA Funds, Inc.'s Exhibit F. The Debtor, however, testified that she and her husband each pay half of the monthly expenses, including the mortgage payment of approximately $400.00. Mr. Rexroad testified that he earns an annual income of $37,000.00 which equates to approximately $1,400.00 per month in net income. Mr. Rexroad testified that the Debtor is covered under his medical insurance.

### DISCUSSION

The Court has jurisdiction in this adversary proceeding by virtue of Section

1334(b) of Title 28 of the United States Code and General Order No. 84 entered in this district on July 16, 1984. This is a core proceeding under Section 157(b)(2)(I) of Title 28 of the United States Code. This Memorandum of Decision constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### Dischargeability under 11 U.S.C. § 523(a)(8)(B)

Pursuant to 11 U.S.C. § 523(a)(8)(B), a debt for an educational loan "made, insured, or guaranteed, by a governmental unit, or made under any program funded in whole or in part by a governmental unit or non-profit institution," is nondischargeable unless "such loan . . . first became due before more than seven years . . . before the date of the filing of the petition" or unless "excepting such debt from discharge would impose an undue hardship on the debtor and the debtor's dependents." It is undisputed that the notes in this case are subject to 11 U.S.C. § 523(a)(8). It is also undisputed that the notes became due less than seven years before the date of the Debtor's petition. Thus, the Debtor must prove that the repayment of these notes would constitute an undue hardship under the statute.

■ The Bankruptcy Appellate Panel for this Circuit has held that the test adopted by the Second Circuit Court of Appeals in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395, 396 (2d Cir.1987), is the appropriate standard to apply in adversary proceedings regarding the dischargeability of student loans. *See, Dolph v. Pennsylvania Higher Education Assistance Agency (In re Dolph)*, 215 B.R. 832, 836 (6th Cir. BAP 1998). The *Brunner* test was approved, but not adopted by, the Sixth Circuit Court of Appeals in *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356 (6th Cir.1994). The *Brunner* test, as restated in *Cheesman*, requires a debtor to demonstrate:

(1) that the debtor cannot maintain, based on current income and expenses, a minimal standard of living for herself and her dependents if forced to repay the loans;

(2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period . . . ; and

(3) that the debtor has made good faith efforts to repay the loans.

*Dolph*, 215 B.R. at 836 (citations omitted). The Sixth Circuit has also held that a bankruptcy court may also consider "the amount of the debt . . . as well as the rate at which interest is accruing" and "the debtor's claimed expenses and current standard of living, with a view toward ascertaining whether the debtor has attempted to minimize the expenses of himself and his dependents." *Rice v. United States (In re Rice)*, 78 F.3d 1144, 1149 (6th Cir.1996).

■ Applying these standards, the Court finds that the Debtor is not entitled to discharge her student loans on the basis that the repayment of these loans would constitute an undue hardship.

■ If the inquiry were limited to the circumstances as they existed at bankruptcy, the Debtor has likely met her burden as defined by the authorities cited. Her current monthly income as listed in her petition is $1,400.00. However, the Debtor's 1998 federal income tax return reveals gross income from her waitress position and from performing any fill-in chiropractic work of $15,523.43, or less than $1,300.00 per month. The Debtor lists in her petition current monthly expenses of $1,762.71, which seem reasonable except for the $345.00 per month budgeted for the x-ray machine lease which the Debtor testified that she no longer is required to pay. The evidence at trial, however, revealed that the Debtor's current monthly ex-

penses are $817.00.[2] The Court, however, finds that $200.00 of that amount, which the Debtor budgeted for a mortgage payment, must be deducted because she is not liable for that obligation under the antenuptial agreement she signed prior to her marriage. Thus, the Debtor's current monthly obligations amount to $617.00. The Debtor currently earns $2.15 per hour plus tips as a waitress and works approximately 30–40 hours a week. Moreover, the income generated from the Debtor's fill-in work as a chiropractor is at best uncertain. The Debtor drives a 1992 Dodge Shadow which has over 162,000 miles and she testified that she has not recently purchased any luxury items. Further, the Court must also consider the large budgeted monthly student loan payment of $527.71. Upon these facts, it is clear that the Debtor cannot currently maintain a minimal standard of living if forced to repay her student loans.

■ The Court also concludes that the Debtor has made a good faith effort to repay her student loans. In *Cheesman*, the Sixth Circuit found that the debtors in that case exhibited good faith by making "minimal payments on their loans several years after their loans became due and at least a year before filing for bankruptcy." *Cheesman*, 25 F.3d at 360. In this case, the Debtor has presented copies of checks paid to the various lenders from 1994 through 1998 which total $17,955.50. *See,* Debtor's Exhibit # 7. These checks indicate that the Debtor made payments on her student loans regardless of her employment status and she also testified that she took cash advances on her credit cards to maintain these payments. The Debtor also testified that she took several forebearances on her loans while she was attempting to establish her chiropractic business. Although these payments merely satisfied the interest accruing on these loans, there is no question that they signify the Debtor's good faith efforts to repay her student loan obligations.

■ The Court, however, finds that the Debtor has not met her additional burden of proving that she will have insufficient financial resources for the foreseeable future to meet her living expenses as well as her student loan obligations. In *Dolph,* the Panel held that "[t]he appropriateness of [Dolph's] job search is more relevant to the factual finding ... that additional circumstances exist to indicate that [Dolph's] financial situation is likely to persist." *Dolph,* 215 B.R. at 837. The Court finds that the Debtor has not conducted an effective job search considering her potential marketability as a chiropractor, coupled with her bachelor's degree in Biology. The Debtor provided a detailed list of the various employers to which she has applied for chiropractic positions and the results of such efforts. *See,* USA Funds, Inc.'s First Set of Interrogatories to Plaintiff, Exhibit B, p. 7. The Debtor's list, however, reveals that she applied for only two chiropractic positions in 1997 and applied for no such positions in 1998 or 1999. Indeed, the Debtor testified that she has not applied for any chiropractic positions since January, 1998. The Debtor also admitted that she has not applied for any other part-time positions to supplement her income. When questioned by counsel for USA Funds, the Debtor admitted that she has not contacted Logan College's placement office to inquire about the availability of any chiropractic positions despite being licensed as a chiropractor in three states. She admitted that she has not contacted any former employers or potential employers to which she had previously sent résumés. Further, the Debtor admitted to not recently contacting any temporary agencies or job search offices regarding chiropractic positions. The Debtor also admitted not conducting a job search in other related medical fields, such as research, to utilize her Biology degree. Her

---

**2.** The Court notes that the Debtor's budgeted monthly expenses relating to her chiropractic practice of $217.00 are reasonable in order to maintain her license.

fill-in chiropractic work in 1998, which she conducted in addition to her waitress work, amounted to only 21 days.

It is clear that if the Debtor were able to obtain full-time employment as a chiropractor or in another medical-related field, she could make significant payments on her student loans. For example, in 1996, the Debtor reported income of approximately $32,000.00 in five months from her chiropractic work in New Philadelphia, Ohio. The Court finds that the Debtor, with her significant experience, relatively young age, and her professional degrees, can reasonably be expected to obtain higher paying employment in her chosen profession as a chiropractor rather than merely performing fill-in work and working as a waitress. Alternatively, the Court suggests that the Debtor should conduct an appropriate job search to locate employment which would utilize her degree in biology. Accordingly, the Court finds that the Debtor has failed to carry her burden in proving, by a preponderance of the evidence, that circumstances will prevent her financial condition from improving in the future. Therefore, the Court holds that the Debtor's student loans at issue are nondischargeable.

The Sixth Circuit Court of Appeals, however, in *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433 (6th Cir.1998), held that bankruptcy courts have the power, pursuant to 11 U.S.C. § 105(a), to grant debtors relief short of total discharge in student loan dischargeability actions. In that case, the Sixth Circuit held that:

> [W]here a debtor's circumstances do not constitute undue hardship, some bankruptcy courts have thus given a debtor the benefit of a "fresh start" by partially discharging loans, whether by discharg-

ing an arbitrary amount of the principal, interest accrued, or attorney's fees; by instituting a repayment schedule; *by deferring the debtor's repayment of the student loans;* or by simply acknowledging that a debtor may reopen bankruptcy proceedings to revisit the question of undue hardship. We conclude that, pursuant to § 105(a), the bankruptcy court here may fashion a remedy allowing the Hornsbys ultimately to satisfy their obligations to TSAC while at the same time providing them some of the benefits that bankruptcy brings in the form of relief from oppressive financial circumstances.

*Hornsby*, 144 F.3d at 440 (emphasis added).[3]

█ Pursuant to the Sixth Circuit's ruling in *Hornsby*, the Court finds that the Debtor is entitled to some relief short of total discharge of her student loans. In view of the large amount of student loan debt in this case, the Court finds that the Debtor's scheduled monthly student loan payment should be reduced in the aggregate by 50% for a period of one year commencing from the date of the Order accompanying this Memorandum of Decision. The Court further finds that the interest accruing on all of the Debtor's student loan obligations should be suspended for the same period of time. Within that one year period, the Court directs the Debtor to use every reasonable effort to locate employment in her chosen profession or to improve her income in non-chiropractic fields of employment. The Court emphasizes that the student loans at issue are nondischargeable and after this one year period, the Debtor will be required to resume her regular monthly payments and interest on these loans will

---

**3.** In *Hornsby*, the Sixth Circuit also found that:

> [A]lthough the bankruptcy court should not have discharged the Hornsbys' entire student loans, we believe it had the power to take action short of total discharge. We find this authority in § 105(a) . . . . . . In a

student loan discharge case where undue hardship does not exist, but where facts and circumstances require intervention in the financial burden on the debtor, an all-or-nothing treatment thwarts the purpose of the Bankruptcy Act.

*Hornsby*, 144 F.3d at 438–439.

accrue following the Court's one-year moratorium.[4]

---

**4.** The Debtor testified that she received a tax refund in 1998 in the amount of approximately $680.00. The Court suggests that the Debtor use that refund to pay her membership dues in the Ohio State Chiropractic Association in order to obtain access to the classified advertisements available from that organization.