**In re Troulies LEDBETTER, Debtor.**

**Troulies Ledbetter, Plaintiff,**

v.

**United States Department of Education, Defendant.**

**Bankruptcy No. 99–11050.
Adversary No. 99–1088.**

United States Bankruptcy Court, S.D. Ohio, Western Division.

Sept. 12, 2000.

sult does not change.

Michael R. Voorhees, Cincinnati, OH, for debtor.

Henry E. Menninger, Jr., Cincinnati, OH, trustee.

## MEMORANDUM OF DECISION

JEFFERY P. HOPKINS, Bankruptcy Judge.

The issue before the Court is whether the Debtor, Troulies Ledbetter ("Ledbetter"), is entitled to a discharge of an indebtedness arising from two student loans. An evidentiary hearing was held on May 24, 2000. Based upon the following findings of fact and conclusions of law, made pursuant to Fed.R.Civ.P. 52(a), the Court concludes that the indebtedness related to one of the student loans is subject to discharge while the other is not.

### I

The dischargeability of student loans is governed by 11 U.S.C. § 523(a)(8), which provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or non-profit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

The debtor bears the burden of proof under § 523(a)(8). *Dolph v. Pennsylvania Higher Educ. Assistance Agency (In re Dolph)*, 215 B.R. 832, 836 (6th Cir. BAP 1998).

 Courts have applied multiple tests to determine whether a student loan debt imposes an undue hardship. The Sixth Circuit, preferring to examine and weigh multiple factors, has chosen not to adopt any particular test. *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 437 (6th Cir.1998). However, the court has approved of the use of a three-part test set forth in *Brunner v. New York State Higher Educ. Servs.*, 831 F.2d 395, 396 (2d Cir.1987). *See Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356, 359 (6th Cir.1994); *see also Hornsby*, 144 F.3d at 437.[1] The *Brunner* test requires proof of each of the following elements:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner*, 831 F.2d at 396. In addition to the *Brunner* factors, the Sixth Circuit has examined, among others, the debtor's income in light of the federal poverty guidelines. *See Cheesman*, 25 F.3d at 359; *Hornsby*, 144 F.3d at 436.

## II

 Ledbetter is a forty-six year old male with no dependents. In 1987, Ledbetter obtained two student loans to attend Tri–State Truck Driving School in Columbus, Ohio. One loan was for $2,625.00 and the other was for $2,375.00. Prior to 1998, Ledbetter made no payments on the loans. Thereafter, Ledbetter made three payments of $200.00 each. No additional payments have been made. Ledbetter is presently employed with Portion Pac as a forklift driver. He has net monthly income of $1,368.24 and monthly expenses of 1,370.00. Schedule F reflects that the balance owed on the loans as of the petition date was $11,495.82. The loans represent the only debt scheduled in Ledbetter's Chapter 7 case.

## III

The first factor that weighs against Ledbetter is his annual income when compared to the federal poverty guidelines. The 1999 poverty guideline for a family of one was $8,240.00 annual income. Ledbetter's annual income for 1998 was $24,000.00. His annual income for 1999 was $16,000.00.[2] Amended Schedule J reflects that his annual income for 2000 will be approximately $24,000.00. These figures do not bode well for Ledbetter considering that the Sixth Circuit had a problem with the Hornsbys' annual income when it was twice the amount of the applicable poverty guideline. *See Hornsby*, 144 F.3d at 436. Another factor that militates against Ledbetter is the third prong of the *Brunner* test-the requirement that the debtor make a good faith effort to repay the loan. Bankruptcy courts within this circuit have found a lack of good faith where the debtor makes nominal payments on a student loan that represents the majority of the scheduled debt in the bankruptcy case. *See*

---

1. Subsequent to *Cheesman*, bankruptcy courts within the circuit, almost without exception, have applied the *Brunner* test. *See e.g., Dolph*, 215 B.R. at 836, *Fraley v. U.S. Dept. of Educ. (In re Fraley)*, 247 B.R. 417 (Bankr. N.D.Ohio 2000) (Speer, C.J.); *Chambers v. Nat'l Payment Center (In re Chambers)*, 239 B.R. 767 (Bankr.N.D.Ohio 1999) (Baxter, J.); *Markley v. Educ. Credit Mgmt. Corp. (In re Markley)*, 236 B.R. 242 (Bankr.N.D.Ohio 1999) (Shea–Stonum, J.); *Pantelis v. Kent State Univ. (In re Pantelis)*, 229 B.R. 716 (Bankr.N.D.Ohio 1998) (Williams, J.).

2. Ledbetter testified that the significant reduction was the result of a loss of overtime hours.

*Douglass v. Great Lakes Higher Educ. Servicing Corp. (In re Douglass)*, 237 B.R. 652 (Bankr.N.D.Ohio 1999) (no good faith effort to repay where debtor made no payments on loans that represented 92% of her total indebtedness); *Mitchell v. U.S. Dept. of Educ. (In re Mitchell)*, 210 B.R. 105 (Bankr.N.D.Ohio 1996) (no good faith effort to repay where debtor made only $300.00 payment on debt that was the only scheduled debt in the case); *Cobb v. University of Toledo (In re Cobb)*, 188 B.R. 22 (Bankr.N.D.Ohio 1995) (no good faith effort to repay where debtor made only two payments on loans representing over 50% of scheduled debt); *Daugherty v. First Tennessee Bank (In re Daugherty)*, 175 B.R. 953 (Bankr.E.D.Tenn.1994) (no good faith effort to repay where debtor made only two payments on loans amounting to 47% of total unsecured debt). Ledbetter made only three payments on two loans that represent the only scheduled debt in this case.

The third and final factor that works against Ledbetter is the first prong of the *Brunner* test—whether Ledbetter can maintain, based on current income and expenses, a minimal standard of living for himself and his dependents if forced to repay the loans. *See Brunner*, 831 F.2d at 396. When analyzing this first prong of the *Brunner* test, courts look to the debtor's income and expenses and whether the debtor is maximizing employment opportunities while minimizing expenses. *Markley*, 236 B.R. at 247. A review of Ledbetter's amended Schedule J leads the Court to question whether he has minimized his expenses. First, Ledbetter is spending $500.00 per month for rent. Chief Judge Speer recently concluded that monthly

rent of $500.00 is not a necessary expense for an individual with no dependents. *See Fraley*, 247 B.R. at 421. Second, Ledbetter's budget allocates $100.00 per month for medical and dental expenses. The Court finds this to be excessive given that Ledbetter: (1) has no significant health problems; (2) has health insurance through his employer that requires only a nominal co-pay for office visits and prescription drugs; and (3) has no dependents.[3] In addition to his scheduled expenses[4], Ledbetter has not left the Court with the impression that he is maximizing his employment opportunities. First, Ledbetter admitted that he has not made any effort to find a better paying job driving a truck.[5] Second, the record reveals no effort by Ledbetter to obtain additional hours at a second job once his overtime hours with Portion Pac were eliminated. Given that Ledbetter is willing to work overtime if the opportunity arises, the Court sees no reason why he, being an individual with no dependents, couldn't work a few hours per week at a second job. Based upon the foregoing, Ledbetter should have little problem allocating $150.00 per month[6] toward repayment while maintaining a minimal standard of living. This amount is more than sufficient to repay the $2,375.00 loan, including arrears, over a period of five years.

## IV

For the foregoing reasons, the Court finds that only one of Ledbetter's student loans, in the principal amount of $2,625.00, imposes an undue hardship and is subject to discharge. The other loan, in the principal amount of $2,375.00, is hereby deter-

3. The Court finds it particularly compelling that Ledbetter's original Schedule J budgeted only $20.00 per month for medical and dental expenses. The record contains no explanation for such a significant increase.

4. Although Ledbetter's food and toiletries expenses appear to be excessive, they are offset by his reduced transportation expenses given that he now uses his mother's car.

5. Ledbetter's truck driving training is not a necessary qualification for his present employment.

6. The $150.00 figure is derived as follows: (1) $50.00 less per month on rent; (2) $50.00 less per month for medical/dental expenses; and (3) $50.00 net income per month from overtime or second job.

mined to be nondischargeable-including arrears and interest at the contract rate.[7] *See Andresen v. Nebraska Student Loan Program, Inc. (In re Andresen),* 232 B.R. 127, 136 (8th Cir. BAP 1999) (noting that Bankruptcy Code permits courts to analyze each loan separately under § 523(a)(8)); *Hinkle v. Wheaton College (In re Hinkle),* 200 B.R. 690, 692–93 (Bankr.W.D.Wash.1996) (same). A judgment to this effect will be entered.

7. The $600.00 paid by Ledbetter toward his loans shall not be credited to the nondischargeable debt.