In re Sharon M. DOUGLASS, Debtor.

Sharon M. Douglass, Plaintiff,

v.

Great Lakes Higher Education Servicing Corporation, et al., Defendants.

Bankruptcy No. 98–19804(B).
Adversary No. 99–1155.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Aug. 19, 1999.

Stephen G. Macek, Chardon, Ohio, for plaintiff.

Lloyd J. Blaney, Madison, Wisconsin, for defendant.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

In this voluntary Chapter 7 proceeding, Sharon M. Douglass (the Debtor) seeks to obtain a discharge of certain student loan obligations under 11 U.S.C. § 523(a)(8). Following a trial on the matter, and an examination of the evidence and record, generally, the following findings of fact and conclusions of law are rendered.

Core jurisdiction is acquired for the determination of this proceeding under 28 U.S.C. 1334, 28 U.S.C. § 152(b)(2)(i) and General Order No. 84 of this district. The relevant facts are generally not in dispute.

The Debtor is a 46–year old divorced and unremarried female who is currently employed as a home health aide, earning between $1,100.00 to $1,200.00 per month. Her two minor children are in the custody of her former husband. She has no alimony or child support obligations. In 1985, at approximately 32 years of age, she obtained her general equivalency diploma (GED) and, subsequently, received an Associate of Arts degree from Lakeland Community College (Lakeland) in 1989. In 1995, she matriculated to the Cleveland State University (C.S.U.) where she was awarded a Bachelor of Arts degree in Social Work in 1998 as an honor graduate.

In order to finance her education, the Debtor obtained various student loans while studying at both Lakeland and at C.S.U. These loans were ultimately consolidated and are guaranteed either by the Student Loan Funding Corporation or the Educational Finance Corporation. Defendant Star Bank, N.A. (Star Bank) is holder of the consolidated loan note, while Defendant Great Lakes Higher Education Servicing Corporation (Great Lakes) is the servicing agent for Star Bank. The outstanding balance on the loan is $56,858.00 which constitutes ninety-two percent (92%) of the debtor's scheduled indebtedness.

The Court must determine whether an undue hardship has been proven by the Debtor sufficient to warrant the discharge of the subject student loan.

In support of her Complaint for discharge, Debtor contends that although her living expenses have been minimized, her monthly expenses exceed her income. She is the owner of modest personal and real property. Additionally, she asserts that excepting the loan from discharge will impose an undue hardship on her. Great Lakes contends that the loan is clearly an obligation of the Debtor, and that she has failed to demonstrate a basis for a hardship discharge of the loan.

■ Historically, Congress has intentionally and progressively made it more difficult for student loan obligations to be discharged in bankruptcy cases. A provision regarding the dischargeability of student loans initially was provided in the Higher Education Act of 1965.[1] It appeared substantially in the same form as is found in the 1978 Bankruptcy Commission Report and has been maintained since the 1978 Code to the present with only nominal changes. Modifications of its scope in

---

1. Pub.L. 89–329, § 439A, as added by Education Amendments of 1976, Pub.L. No. 94–482, § 127(a), 90 Stat. 2141 (repealed by Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 317, 92 Stat. 2678).

the 1978 Bankruptcy Code expanded its coverage. Specifically, the 1978 Code denied a discharge of liability to a "governmental unit or a nonprofit institution of higher education for an educational loan". Currently, the Code denies discharge:

> [F]or an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program founded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend..... 11 U.S.C. § 523(a)(8).

As noted above, the Congressional reach of nondischargeability has consistently expanded. Earlier, such loans were nondischargeable where the initial payment became due within a five (5) year period of a debtor filing bankruptcy. Subsequently, the prohibited period was extended to seven (7) years. Presently, there exists no specific time period of prohibition. Rather, the affected debtor must demonstrate an "undue hardship" in order to except the student loan from nondischargeability.

In the adjudication of student loan dischargeability matters, the term "undue hardship" is not to be considered cavalierly. Not just any hardship qualifies under § 523(a)(8). The "undue" aspect of the hardship necessarily must reflect some enduring or indefinite characteristic of an extraordinary nature which was not created as a result of the debtor's own doing. Furthermore, a short term hardship is not sufficient to render the student loan debt dischargeable. That scenario was considered by the Bankruptcy Reform Commission which developed the 1978 Bankruptcy Code:

> In order to determine whether nondischargeability of the debt will impose "an undue hardship" on the debtor, the rate and amount of his future resources should be estimated reasonably in terms of ability to obtain, retain, and continue employment and the rate of pay that can be expected. An unearned income or other wealth which the debtor can be expected to receive should also be taken into account. The total amount of income, its reliability, and the periodicity of its receipt should be adequate to maintain the debtor and his dependents, at a minimal standard of living within the management capability, as well as to pay the educational debt.[2]

In *Brunner*, a case in which the debtor's situation evinced a hardship much greater than the present Debtor's, that debtor's hardship argument was rejected by the court.[3] Therein, Brunner had a bachelor's and a master's degree in social work. At the time of her bankruptcy filing, she had paid only a few hundred dollars on her $9,000.00 student loan. The bankruptcy court discharged her student loan. That ruling was reversed on appeal by the district court. Upon further appeal to the Second Circuit, the district court's reversal was affirmed leaving the student loan debt nondischargeable. Certain alleged characteristics of Brunner's alleged hardship are notable in comparison to the Debtor's alleged hardships. At the time of her dischargeability hearing, Ms. Brunner received $258.00 monthly in public assistance; $49.00 per month in food stamps, and received assistance from Medicaid. She had $200.00 on deposit in her bank account, but two months prior to the hearing had withdrawn $2,400.00 from her savings to purchase a used automobile. Although she was seeing a therapist for treatment of anxiety and depression due, in part, to her unemployment, she testified that she was capable of working.[4] Her student loans constituted eighty percent (80%) of her total indebtedness. Notwith-

---

**2.** *Collier on Bankruptcy,* 2 Appendix at 140–41, 9 King, L., et al., (15th Ed.1979).

**3.** See, *Brunner v. N.Y. State Higher Education Services,* 831 F.2d 395 (2d Cir.1987).

**4.** 46 B.R. at 757.

standing those factors, the reviewing courts determined that no undue hardship was sufficiently demonstrated under § 523(a)(8) to warrant a debt discharge. By comparison, Sharon Douglass' alleged hardship pales. This Debtor is on no public assistance; receives no medicaid assistance; has no physical, emotional, or mental problems of note; her student loans constitute some ninety-two percent (92%) of her total indebtedness; and she has made no payment on her student loans. Indeed, she graduated from college in June of 1998. Her first loan payment was due on January 15, 1999. She filed for bankruptcy on December 18, 1998.

As may be discerned from the above statutory language, not just any hardship will render a qualifying student loan obligation dischargeable. The hardship visited upon a debtor in bankruptcy necessarily must be an "undue" hardship upon the debtor or the debtor's dependents. Herein, the Debtor has no dependents. Two of her four (4) children are emancipated, while her two minor children, aged 13 and 15, respectively, reside in the custody of their father. She has no support obligation for either child.

■ In dischargeability matters, the burden of proof is upon the complainant who must demonstrate a sustainable basis for its action by a preponderance of the evidence. See, *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). Herein, that burden is reposed upon the Debtor who must satisfactorily meet each element under § 523(a)(8) of the Bankruptcy Code.

The Debtor's income has been presented equivocally. Her Complaint reflects that she earns between $13,200.00—$14,000.00 per year, although her trial brief indicates that she earns below the U.S. Department of Health and Human Services poverty level of $8,240.00 per year for a single individual. Her 1998 federal tax return shows she earned $15,060.00 (See, Exh. 2–1). Her 1997 and 1996 federal tax returns (Exhs. 3 and 4) report earnings of $10,-908.00 and $8,621.00, respectively. At trial, however, she testified that she currently earns between $900.00 to $1,200.00 per month. Petition Schedule "I" prepared by the Debtor on December 18, 1998 reported "0" current income. Clearly, her actual income cannot be discerned from these conflicting reports.

The Debtor's employability is, however, clearly presented. As stated above, she is an honors college graduate (Debtor, Direct Exam.) with a degree in Social Work. She has been self-employed since May of 1999 and has been a state tested nurses aide since 1986, performing private duty health and nursing care. She undergoes in-service training every four months to insure the marketability of her skills (Debtor, Direct). Although she received her college degree in Social Work in 1998, she has yet to take the state's license examination for certification in her field. Upon inquiry, she testified that she had not taken the license exam due to a lack of time and money. She believes that she can successfully pass the license exam for social workers. (Debtor, Direct).

The Debtor lives alone in her own mobile home, which has a current balance of $2,500.00. Her lot rent is in a delinquent status. Other than being diabetic and allergic to certain matters, her testimony revealed that she is in good health. She is both mentally and emotionally stable.

In this Circuit, no particular test has been enunciated to assist with the adjudication of student loan dischargeability issues. At best, the Sixth Circuit has addressed what apparently is tantamount to a "totality of the circumstances" approach. See, *In re Cheesman*, 25 F.3d 356, 360 (6th Cir.1994). Many courts, however, have adopted a test developed by the Second Circuit in *Brunner, supra.* Therein, that court held that for an undue hardship to exist, the debtor must demonstrate the following:

1) That the debtor cannot maintain, based on current income and expenses, a

minimal standard of living for herself and her dependants if forced to repay the loans;

2) That additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period; and

3) That the debtor has made good faith efforts to repay the loans. *Id.* at 396.

■ Although the Sixth Circuit has not expressly adopted the *Brunner* test, it incorporated the *Brunner* analysis in its holding in *Cheesman, supra.* More recently, it has been determined, however, that in the absence of an adoption of a specific test by the Sixth Circuit, the *Brunner* test, to the extent restated by the Sixth Circuit in *Cheesman,* is an appropriate test to apply in an adversary proceeding regarding the dischargeability of student loans. See, *In re Dolph,* 215 B.R. 832, 836 (6th Cir. BAP 1998).

■ The Debtor filed her voluntary petition for relief under Chapter 7 on December 18, 1999. This is her second bankruptcy filing. The Debtor testified, incredibly, that her student loan obligations had no impact upon her decision to file the present bankruptcy case. Her petition schedules show that she owns no real property (Schedule A). She owns personal property valued in the amount of $3,725.00 (Schedule B), of which she exempted $3,000.00 from her bankruptcy estate (Schedule C). Her total secured debt is $2,495.95 (Schedule D), against total unsecured debt of $62,082.66 (Schedules E & F). Notwithstanding her testimony to the contrary, her scheduled debts clearly evince that her consolidated student loan obligation ($56,000.00) represents ninety-two percent (92%) of her total debt. Certainly, such a substantial student loan obligation, in relation to the non-student loan debts, would impact greatly upon one's decision to file for bankruptcy relief.

The Debtor offered only her testimony to support her contention that excepting the student loans from discharge would cause her to suffer an undue hardship. Her reasoning is not persuasive. An examination of the record, generally, and of the testimony adduced fails to show by a preponderance of the evidence that the Debtor has demonstrated that she cannot maintain, based on current income and expenses, a minimal standard of living for herself if forced to repay the loans. Again, she has no dependents; her income has been inconsistently reported; she is employed; she is employable with marketable skills; she enjoys good and stabilized health, according to her own testimony; and her current income is not at its maximum earning potential due to her own failure to take the required licensure examination for certification in her chosen field of study. Her assertion that she has not had the time one year after receiving her degree in Social Work to take the exam is also incredible. Her further contention that she could not afford to pay the $250.00 exam fee is also unpersuasive. This is especially so where she failed to demonstrate any effort on her part to obtain a waiver or deferral of such fee. Simply stated, she has failed to meet her burden of proof in this regard.

Furthermore, none of the other debts scheduled by the Debtor for discharge, have been challenged and, apparently, are dischargeable debts. This would include all of the non-student loan debts which are delinquent. Additionally, it is noted that the Debtor reaffirmed none of her scheduled indebtedness.

Next, the Debtor has demonstrated no additional circumstances which would indicate that her current state of affairs is likely to persist for a significant portion of the repayment period. She graduated from college with honors and believes she can successfully pass her licensing examination which she plans to pursue in December of 1999. Since filing for bankruptcy relief on December 18, 1998, she has constantly endeavored to improve her income status. (Debtor, Response to Ct. inquiry). She acknowledges that her skills

are marketable and has undertaken periodic in-service training to insure the marketability of her skills (Debtor, Direct).

Debtor's assertion that her projected income as a licensed social worker in Ohio would pay a $20,000.00 annual salary, was not supported by credible evidence. Her projections in this regard were conclusory, self-serving, and were not supported by credible objective evidence. (See, Exhs. 20–1, 20–2, 20–3, 20–4, 20–5 and 20–6). Consequently, no credible evidence was adduced to show a minimum or maximum income range for the Debtor as a licensed social worker once she becomes licensed. Further, the Debtor suffers no physical, mental, or emotional disability; has no dependent responsibilities; is not elderly; and suffers no apparent or demonstrated abuse which will impede her career advancement. See, *In re Pantelis*, 229 B.R. 716, 719 (Bankr.N.D.Ohio 1998); *In re Diaz*, 5 B.R. 253, 254 (Bankr.W.D.N.Y. 1980); *In re Bagley*, 4 B.R. 248, 251 (Bankr.D.Ariz.1980).

Lastly, it must be determined whether the Debtor has made good faith efforts to repay the subject loan. Notedly, the Debtor filed the present bankruptcy in December of 1998. Her first payment became due on the consolidated student loan in June of 1999. Clearly, the Debtor had no intention of repaying the loan by filing for bankruptcy relief before the loan became due. Indeed, she has made not a single payment on the loan. While in college, she obtained a loan repayment deferral from Great Lakes until June, 1999 (Debtor, Cross Exam). No other deferral request was made by the Debtor. Effectively, the approved deferral until June, 1999 allowed the Debtor sufficient time to seek a discharge of this debt before it became due.

The loan repayment period is twenty-five (25) years. Notwithstanding the Debtor's argument that she would be 76 years of age at the end of the repayment period, it can be reasonably presumed that she possessed this knowledge at the time she applied for the loans. Not only has the Debtor failed to make a payment on the loan, she has made no attempt to negotiate any repayment schedule which would accommodate her means. The U.S. Department of Education also offers a number of student loan repayment options. One of which is referred to as the income contingent repayment plan (ICRP). See 20 U.S.C. § 1078(m). ICRP repayment terms are available for most defaulted loans held by the Department of Education. The annual amount payable under an ICRP by a borrower is the lesser of (1) the amount the borrower would repay annually over twelve years or (2) twenty percent (20%) of discretionary income. See, 20 U.S.C. § 1087(a), et seq.; 34 C.F.R. § 685.209(a)(2)(i) and (ii).[5] Additionally, where a borrower believes that special circumstances warrant an adjustment to the borrower's repayment obligations, the borrower may contact the Secretary of Education and obtain the Secretary's determination as to whether an adjustment is appropriate. Id. at (6)(ii). The Debtor's attempt to obtain a discharge of her student loans under these circumstances is tantamount to an abuse of the bankruptcy process. She has failed to satisfy the good faith test in repaying her loan.

### Conclusion

Accordingly, the subject loan obligation is hereby determined to be nondischargeable, with judgment hereby granted in favor of Defendant Great Lakes. Each party is to bear its respective costs.

IT IS SO ORDERED.

---

5. The maximum repayment period under the ICRP is twenty-five (25) years. If a borrower has not repaid a loan in full at the end of the twenty-five year repayment period under the ICRP, the Secretary cancels the unpaid portion. 34 C.F.R. § 685.209(a)(4)(i) and (iv).