In re Annette D. CARLSON, Debtor.

Annette D. Carlson, Plaintiff,

v.

UNIPAC Student Loan, Defendant.

Bankruptcy No. 00–07519/W.
Adversary No. 00–80255/W.

United States Bankruptcy Court,
D. South Carolina.

May 18, 2001.

482

Jan M. Baker, King and Dalrymple, PA, West Columbia, SC, for debtor.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon a Complaint to Determine Dischargeability of Debts filed by Annette D. Carlson ("Plaintiff" or "Debtor") on November 20, 2000. Debtor seeks to discharge a debt in the amount of $6,802.46 owed to Educational Credit Management Corporation ("ECMC"), successor in interest to UNIPAC Student Loan pursuant to 11 U.S.C. § 523(a)(8).[1] After reviewing the pleadings in this matter, considering the evidence presented, and hearing the arguments of counsel at the trial on the merits; the Court makes the following Findings of Fact and Conclusions of Law pursuant to Fed.R.Civ.P. 52, made applicable to bankruptcy proceedings by Fed. R. Bankr.P. 7052.[2]

1. Further references to the Bankruptcy Code shall be by section number only.

2. The Court notes that to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such; and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

## FINDINGS OF FACT

1. Plaintiff is a forty-nine-year-old divorced mother of two. After her divorce in 1986, Plaintiff was awarded custody of her two minor children. Plaintiff's former spouse was ordered to pay support, but Plaintiff received it only sporadically.

2. Shortly after Plaintiff's divorce, she received her GED and enrolled in a junior college. Thereafter, she transferred to a four-year university, and, despite a learning disability and the responsibility of caring for her children, earned academic honors and received a Bachelor of Science in Secondary Education Social Sciences.

3. While pursuing her degree, Plaintiff obtained guaranteed student loans from the Nebraska Student Loan Program. The guaranteed student consolidated loans at issue were originally disbursed by the Nebraska Student Loan Program in four payments occurring in November 1989, January 1990, November 1990, and January 1991. The total principal amount disbursed was $6,402.00. ECMC, successor in interest to UNIPAC Student Loan, is the current owner and holder of the loans at issue.[3]

4. The repayment period on the loans began September 26, 1992. Plaintiff requested and received forbearances on the loan payments for the periods of September 1992 through May 1994, December 1997 through August 1998, October 1998 through June 1999, September 1999 through February 2000, and March 2000

3. The Complaint filed on November 20, 2000 also sought the dischargeability of the student loan owed to Colorado Student Loan Program in the amount of $539.00. However, Defendant Colorado Student Loan Program failed to file an answer to the Complaint; therefore, the debt owed by Plaintiff to that defendant was discharged by virtue of an Order of Default entered February 28, 2001.

through November 2000. However, Plaintiff made her regular payments between the forbearance periods. She made her last payment on the student loans on September 18, 1998, after which she defaulted on her student loan obligations.

5. On August 16, 1999, Plaintiff was involved in an automobile accident and suffered a brain and spinal concussion. Plaintiff's physician has advised Plaintiff that she will never again be capable of holding full-time employment due to her medical conditions caused as a result of the accident.

6. Since the automobile accident, Plaintiff has had a succession of odd jobs, including a position as a vacuum sales person, a radio promoter, and a carpenter. However, due to the injuries she sustained in the automobile accident, Plaintiff has been unable to hold a permanent job. Plaintiff's current income is derived from part-time baby-sitting at the rate of $115.00 per week and a $300.00 contribution from her father each month.[4]

7. At trial, evidence was introduced reflecting Plaintiff's efforts to secure employment. In fact, she introduced copies of multiple cover letters which had been mailed to various employers seeking various job openings. However, up to this time, Plaintiff has been unsuccessful in securing any position, and she testified that her medical conditions which resulted due to the car accident have significantly limited her ability to work.

8. On August 28, 2000, Plaintiff filed a petition for relief under Chapter 7 of the United States Bankruptcy Code. Plaintiff filed this Adversary Proceeding on November 20, 2000, seeking to have the student loans at issues declared dischargeable pursuant to § 523(a)(8).

9. At trial in this matter, Plaintiff demonstrated to the Court that she was not able to afford housing and she currently resides with a friend. Her monthly income, including the $300.00 per month that her father·sends her, is approximately $760.00 per month; while her monthly expenses, including medical expenses, are approximately $739.00 per month.

## CONCLUSIONS OF LAW

The issue before the Court is whether Plaintiff's student loans owed to ECMC, successor in interest to UNIPAC Student Loan are dischargeable pursuant to § 523(a)(8).[5]

Section 523 (a)(8) of the Bankruptcy Code provides as follows:

(a) A discharge under Section 747, 1141, 1228(a), 1228(b) or 1328

(b) of this title does not discharge an individual debtor from any debt— ...

(8) for an education benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an education benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8).

■ In the District of South Carolina, the appropriate test for determining

---

4. At the trial, Plaintiff testified that her father is 87 years old and not independently wealthy. Furthermore, he is presently struggling with cancer; therefore, his financial help that he provides to his daughter is likely to cease in the near future.

5. There is no question that the loan at issue in this case is the type of educational loan "insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution" as required in § 523(a)(8).

whether the repayment of a student loan constitutes an undue hardship on the debtor is outlined in the case of *Ammirati v. Nellie Mae, Inc. (In re Ammirati),* 187 B.R. 902 (D.S.C.1995); *aff'd* 85 F.3d 615 (4th Cir.1996); *see also Myers v. Sallie Mae Student Loans, et al. (In re Myers),* C/A No. 00–08859–W; Adv. Pro. No. 00–80274–W (Bankr.D.S.C.5/14/2001); *McCormack v. Educational Credit Management Corp. (In re McCormack),* C/A No. 99–10637–W; Adv. Pro. 99–80401–W (Bankr. D.S.C.7/3/2000). In order to establish that the repayment of a student loan constitutes a hardship on the debtor pursuant to the Brunner test adopted in *In re Ammirati,* the debtor must establish the following:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents. if forced to repay the loans;
>
> (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
>
> (3) that the debtor has made good faith efforts to repay the loans.

*In re Ammirati,* 187 B.R. at 904 (citing *Brunner v. New York State Higher Educ. Services Corp.,* 831 F.2d 395 (1987)); *see also Grine v. Texas Guaranteed Student Loan Corp. (In re Grine),* 254 B.R. 191, 197 (Bankr.N.D.Ohio 2000) ("[T]he Court observes that it is the Debtor who bears the burden to prove, by a preponderance of the evidence, that each one of the Brunner requirements have been satisfied."); *Greco v. Sallie Mae Serv. Corp. (In re Greco),* 251 B.R. 670, 675–76 (Bankr. E.D.Pa.2000) ("The burden of establishing each prong of the Brunner test lies with the debtor.").

The Court finds that the Plaintiff has demonstrated that the repayment of her student loan would cause her undue hardship. As to the first prong of the Brunner test, " '[t]he bankruptcy court must determine what amount is minimally necessary to ensure that the debtor's needs for care, including good, shelter, clothing, and medical treatment are met.... Once that determination is made, the question is whether the debtor has any additional funds with which to make payments toward his or her student loan obligations.' " *McCormack v. Educational Credit Management Corp. (In re McCormack),* C/A No. 99–10637–W; Adv. Pro. 99–80401–W (Bankr. D.S.C.7/6/2000) (quoting *Salinas v. United Student Aid Funds, Inc. (In re Salinas),* 240 B.R. 305, 314 (Bankr.W.D.Wis.1999)). In this case, the parties agreed that the first requirement was met in that, based on her current income and her modest monthly budget, Plaintiff would not be able to maintain a minimal standard of living.[6] Thus, the issues remaining before the Court and which are in dispute among the parties are whether Debtor's conditions and inability to repay the loan are likely to persist in the future, and whether she has made good faith efforts to repay the loans at issue.

---

**6.** Debtor testified that her monthly income is approximately $760.00 per month, while her monthly expenses total approximately $739.00 per month. Her present income includes the $300.00 per month that her eighty-seven-year-old father who has cancer gives her. Debtor is not able to afford housing and is currently living with a friend. Despite the fact that she is technically qualified for unemployment benefits, she explained that she cannot draw such benefits. Furthermore, her medical conditions have caused her to incur many medical bills. Even though she has been declared indigent by her medical provider, and thus a large portion of her medical bills have been forgiven, she is still responsible for a portion of those and incurs additional monthly expenses for her medications.

■ As to the first issue, the Court finds that circumstances are present in this case to indicate that Plaintiff's inability to repay will persist for a significant portion of the loan repayment period. In determining the second prong of the Brunner test, the Court must consider whether the circumstances that prevent the debtor from being able to make the student loan payments are temporary or whether they are likely to persist into the future. As the Court noted in the case of *Salinas v. United Student Aid Funds, Inc. (In re Salinas)*, 240 B.R. 305 (Bankr.W.D.Wis. 1999):

> The requirement that there be some "additional circumstances" which indicate that the debtor will be unable to make payments does not mean that only those debtors who are elderly or disabled can obtain a discharge.... In considering the debtor's future financial prospects, the financial, physical, or mental hardship which may have precluded the debtor's current or past ability to address the debt must appear likely to continue indefinitely into the future.

*Id.* at 314–15. In this case, as a result of her medical condition, Plaintiff has been unable to secure steady employment since her automobile accident in 1999. Furthermore, Plaintiff testified that her physician has advised that Plaintiff will never again be able to be employed full time. Due to the permanent debilitating nature of her injuries, the Court finds that the Plaintiff's income is not likely to increase to a level that would allow her to repay her student loans.

■ Finally, the Court finds that Plaintiff did make a good faith effort to repay the loan. In considering whether a debtor has acted in good faith in the repayment of his or her student loans, the following factors are usually considered:

(1) whether the debtor attempts to repay the debt;

(2) the length of time after the student loan becomes due that the debtor seeks to discharge the debt;

(3) the percentage of the student loan debt in relation to the debtor's total indebtedness;

(4) the debtor's attempts to find suitable employment.

*McCormack v. Educational Credit Management Corp. (In re McCormack)*, C/A No. 99–10637–W; Adv. Pro. 99–80401–W (Bankr.D.S.C.7/6/2000) (quoting *Green v. Sallie Mae Serv. Corp. (In re Green)*, 238 B.R. 727, 736 (Bankr.N.D.Ohio 1999)). In this case, despite the fact that Plaintiff requested and received multiple forbearances on her loan repayment, she did in fact make the payments faithfully between the forbearance periods. Despite her personal difficulties, Plaintiff never fully abandoned her obligation to repay her student loan debt; rather, she paid when she could, sought forbearances when she was unable to make the payments, and kept the student loan lender informed about her financial situation. Furthermore, she has diligently been seeking employment but has been unsuccessful in obtaining a job.

Defendant argued that Debtor cannot meet her burden of proof that the payment of the subject loans would be an "undue hardship" and specifically cannot meet the requirements of the third prong because she may have the opportunity to consolidate her outstanding student loans under an Income Contingent Repayment Program ("ICRP"). At trial, Defendant argued that ICRP loans are available through the U.S. Department of Education, which permit a student loan debtor to pay 20% of the difference between his or her adjusted gross income and the poverty level for her family size or the amount the debtor would pay if the debt were

repaid in 12 years, whichever is less. A debtor's payments could be as low as $0.00, which amount would be subject to adjustment each year based upon the then current balance on the loan as well as the current adjusted gross income. Defendant cited some recent cases in support of her arguments; however, this Court notes that theses cases are distinguishable from the one before it. *See, e.g. United States Dept. of Educ. v. Wallace (In re Wallace),* 259 B.R. 170 (C.D.Cal.2000); *Douglass v. Great Lakes Higher Educ. Serv. Corp. (In re Douglass),* 237 B.R. 652 (Bankr. N.D.Ohio 1999). Both cases address the issue of good faith and focus on whether the debtor ever attempted to negotiate an alternate repayment plan with their lender. For example, in *In re Wallace* the court noted that an important factor to consider is the debtor's effort to negotiate a repayment plan or seek a deferment on her or his loan from the educational lender. *See, e.g. id.* at 185 ("It is unclear whether Wallace ever attempted to negotiate coordinated payments with Education and Hemar. Nor does anything in the record suggest that he never applied for, or inquired about, the 'alternate' plan that the Department's lawyer described several times at the motions hearings."); *see also In re Douglass,* 237 B.R. at 657 ("Not only has the Debtor failed to make a payment on the loan, she has made no attempt to negotiate any repayment schedule which would accommodate her means.").[7] In this case Debtor has asked for forbearances and for various deferral. Furthermore, there is no evidence that Debtor would be qualified for the ICRP Program and there is no proof that Debtor was advised of such option in time for her to properly respond to it or consider it as an option.

The Court disagrees with Defendant's implication that it is Plaintiff's responsibility to seek out every possible alternative payment plan available before she can meet the burden of demonstrating good faith. It is conceivable that there might be a charitable foundation in existence that would possibly provide Debtor with financial assistance; however, the Court is of the opinion that to put a debtor to the impossible burden to seek out every possible program in existence was not contemplated by Congress when § 523(a)(8) was enacted. Lastly, the Court notes that under the program proposed by Defendant, while the educational lender may be paid in full by the Federal Government, Debtor would in turn be indebted to the Federal Government. Debtor would, in essence, be trading debt for debt, without any relief despite meeting the burden of proof on the three requirements of the Brunner test.

In light of these findings and after hearing the credible and persuasive testimony of Plaintiff, the Court concludes that the Brunner test for establishing that the repayment of Debtor's student loan will cause her undue hardship has been met. Thus, the student loan debt is dischargeable pursuant to § 523(a)(8). Based on the foregoing, it is

**ORDERED** that the student loan owed by Annette D. Carlson to Education Credit Management Corporation, successor in interest to the named Defendant UNIPAC Student Loan, is discharged pursuant to § 523(a)(8).

**IT IS SO ORDERED.**

---

**7.** In *In re Douglass* the Court also seemed to indicate that the ICRP program is available only for loans held by the Department of

Education. *Id.* at 657 ("ICRP repayment terms are available for most defaulted loans held by the Department of Education.").