**In the Matter of Dennis F. McMULLIN, Debtor.**

**Dennis F. McMullin, Plaintiff,**

**v.**

**United States Department of Education; California Student Aid Commission, Ed Fund, Educational Credit Management Corporation, National University and University Accounting Services, LLC, Defendants.**

**Bankruptcy No. 02–11058 B. Adversary No. 02–1248.**

United States Bankruptcy Court, E.D. Louisiana.

April 6, 2004.

---

**31.** *Id.* at 1190.

**32.** *Id.* at 248—250 (claim does not include costs which may be incurred in the future).

A. Bowdre Banks, Jr., New Orleans, LA, for Dennis McMullin, Debtor.

Paul N. DeBaillon, Lafayette, LA, for Educational Credit Management Corp.

United States Department of Education, Office of the Attorney General, Eneid A. Francis, U.S. Attorney's Office, New Orleans, LA, for the United States of America.

## MEMORANDUM OPINION

JERRY A. BROWN, Bankruptcy Judge.

This matter came before the court on December 5, 2003 on the complaint of Dennis F. McMullin ("McMullin" or "debtor") seeking discharge of certain student loans. Considering the pleadings, the applicable law, the evidence and the testimony, the court finds that the debtor has sustained his burden of showing undue hardship under 11 U.S.C. § 523(a)(8), and will discharge the student loan debt.

### I. *Background Facts*

The debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on February 19, 2002, and received his discharge on June 12, 2002. On November 29, 2002, McMullin filed a complaint to have his student loan debt declared dischargeable. At issue are student loans stemming from debtor's undergraduate and graduate education, totaling approximately $93,837.25, as follows:

1. Three supplemental loans and two Stafford loans currently held by the U.S. Department of Education ("USDE"), with approximately $59,547.04 in principal and interest due, evidenced by various promissory notes including:

a. July 1, 1985 note in the amount of $1,085.00;

b. October 28, 1985 note in the amount of $5,000.00;

c. January 15, 1987 note in the amount of $6,701.00;

d. February 26, 1988 note in the amount of $7,500.00;

e. November 21, 1988 note in the amount of $7,500.00.

2. Multiple California guaranteed student loans currently held by the Educational Credit Management Corporation ("ECMC"), and guaranteed by the California Student Aid Commission, totaling $34,320.52 in principal and interest, evidenced by various promissory notes including:

a. July 28, 1983 note in the amount of $2,500.00;

b. November 22, 1983 note in the amount of $2, 500.00;

c. February 19, 1987 note in the amount of $2,611.00;

d. May 4, 1988 note in the amount of $2,556.00;

e. March 29, 2989 note in the amount of $2,833.00.

The debtor testified that the loans were obtained while attending National University in La Vista, California in the 1980's. The debtor earned a Bachelors Degree in Business Administration in October, 1985 and a Masters Degree in Business Administration with an emphasis in Organizational Development in January, 1988 from National University.

The parties have stipulated that the debtor is in default on each promissory

note held by defendants.[1] The sole question before the court is whether the debtor has sustained his burden of proving undue hardship sufficient to permit discharge of the loans.

## II. *Applicable Law*

Section 523(a)(8) of the Bankruptcy Code exempts from discharge a debt:

for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

The general rule under Section 523(a)(8) is that educational loans are not dischargeable in bankruptcy. An exception to the non-dischargeability rule exists, however, if the debtor shows that excepting educational loans from discharge "will impose an undue hardship on the debtor and the debtor's dependents." The debtor has never been married and has no dependents, so the sole question is whether the non-discharge of these student loans creates an undue hardship on him.

■ "Undue hardship" is not defined in the Code, but is a term of art which the court interprets in its discretion.[2] That discretion is, however, far from unfettered, as the Fifth Circuit has adopted the three-part test set forth by the Second Circuit in *Brunner v. New York State Higher Edu-*

cation Services Corp.[3] in evaluating the "undue hardship" determination.[4] The *Brunner* test requires a showing:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;

(2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

(3) that the debtor has made good faith efforts to repay the loans.

■ The debtor bears the burden of proof, by a preponderance of evidence, that each of the three elements necessary for discharge has been met.[5] The court finds that the debtor has sustained his burden of proof under each element of the *Brunner* test for undue hardship.

### A. *Current inability to maintain a minimal standard of living.*

■ "The first prong of *Brunner* requires an examination of the debtor's current financial condition to see if payment of the loans would cause his standard of living to fall below that minimally necessary."[6] This showing requires more than a showing of tight finances. Where the debtor's monthly expenses exceed his monthly income, then the present inability to maintain a minimal standard of living is proved.[7]

■ The debtor, a single 51–year old man, testified that he is currently em-

---

1. Joint Pretrial Order, Pl. 32, at 8, 20.

2. *In re Koch*, 144 B.R. 959, 963 (Bankr. W.D.Pa.1992).

3. 831 F.2d 395, 396 (2nd Cir.1987).

4. *In re Gerhardt*, 348 F.3d 89 (5th Cir.2003).

5. *In re Faish*, 72 F.3d 298, 306 (3rd Cir.1995).

6. *In re Roberson*, 999 F.2d 1132, 1135 (7th Cir.1993).

7. *Gerhardt*, 348 F.3d at 92.

ployed as a truck driver, and earned approximately $36,837.25 in 2003.[8] The debtor's bankruptcy schedules indicate that his current gross monthly wages are in the amount of $3033.00, and net monthly wages are $2166.65.[9] The schedules also show that the debtor's monthly expenses are in the amount of $1998.03, a difference of $168.00.[10] The debtor testified at trial that his actual expenditures for food are higher than the $500.00 per month allocated to that expense in his schedules, because so many of his meals are eaten on the road at truck stops, and that meals taken on the road cost significantly more than home-cooked meals. He estimated that his actual monthly expenditures for food included $200.00 per month for groceries and $1667.00 per month for meals on the road.

The defendants complain that the debtor's estimated monthly food allowance of $1867.00 is unreasonable. They assert that the national standards established by the Secretary of the Treasury would permit a monthly food allowance of $321.00, instead of the $500.00 monthly expense listed on the debtor's schedules, or the $1667.00 expense the debtor asserts is the cost of meals taken on the road.

The debtor weighs over 500 pounds. The testimony at trial was that he has had gastric bypass surgery in the past; however, this procedure was not successful and resulted in food simply passing through his system. As a consequence, even greater quantities must be consumed in order for the debtor to retain sufficient nutrients.

His testimony that he spends approximately $1667.00 per month in meals taken on the road, and that the expense is high because the cost of eating in restaurants on the road is greater than the cost of preparing meals at home, though not documented by receipts, was uncontested. Additionally, he is on the road for sometimes weeks at a time, and is limited to eating at venues that can accommodate a large long-haul truck. The court finds this testimony to be credible, and finds that, given the large meal expense, the debtor's expenses exceed his income by several hundred dollars per month.

The debtor's current expenses appear to be reasonable, and not inflated. The court notes that the debtor lacks savings and does not own any real property. The debtor's schedules budget only $125.00 per month for medical and dental expenses. The evidence submitted is that the debtor has numerous medical problems, is taking many medications, and sees his psychiatrist monthly.

The debtor lacks the ability to make payments on the loans and maintain a minimal standard of living. The debtor owes over $93,837.00 in loans. Even without accrued interest, the loan would require over $550.00 in monthly payment for 14 years, if debtor were able to pay the loan until age 65, when he retires. A payment of any substantial amount would preclude even a minimal standard of living. The court finds that the debtor lacks the ability to pay the debt in a reasonable time or in a meaningful manner.

---

8. Exhibit 3; page 60. This amount is for the period January 1 through November 12, 2003, and consists of taxable income of $33,158.39 and net pay of $19,060.20 plus advances of $9,710.59 for reimbursed expenses, for a total net pay of $28,770.79.

9. Exhibit 1; Schedule I—Current Income of Individual Debtor(s).

10. Exhibit 1; Schedule I—Current Expenditures of Individual Debtor(s). The debtor's answers to Interrogatories show different monthly expenses, totaling $2467.00. The difference is largely composed of an increased meal allowance of $1667.00.

### B. Debtor's state of affairs is likely to persist in the future.

■ The second prong of *Brunner* requires the court to determine whether additional circumstances exist indicating that the debtor's inability to pay the loans is likely to persist for a significant portion of the repayment period of the student loans. The *Gerhardt* court specified that "additional circumstances" included circumstances that have an impact on the debtor's future earning potential, but were not present when the loans were applied for, or which have been exacerbated.[11] Examples include "psychiatric problems, lack of usable job skills and severely limited education."[12] The Fifth Circuit in *Gerhardt* has also specified that the second requirement, that additional circumstances indicate the inability to meet minimal standard for living will persist, is meant to be "a demanding requirement."[13] Proving the debtor is in financial straits is insufficient. Instead, debtor must prove "a total incapacity ... in the future to pay [his] debts for reasons not within [his] control."[14]

Unlike the debtor in *Gerhardt*, Mr. McMullin is not a healthy individual, but is in poor health. The debtor testified that he ruptured a disc in his back immediately after obtaining his degree, and currently has a degenerative disk disorder. He testified that he has, in the past, been confined to a wheelchair because of the degenerative disc disorder, and was granted disability by the state as a result of the ruptured disc. Due to medical problems, the debtor has been on disability five times in the past, and social security disability once in 1991.[15] The debtor's physical prognosis has been described as "poor" by his physician, due to chronic medical problems, including chronic degenerative joint disease in the neck and back, and chronic cervical and lumbosacral radiculopathy.[16]

These medical problems are exacerbated by the debtor's morbid obesity.[17] The debtor testified that he weighs over 500 pounds. Despite receiving gastric bypass surgery, the debtor has been unsuccessful in losing weight. The debtor also testified that he suffers from sleep apnea, but because a diagnosis would result in termination from his current employment as a truck driver, he has not publicly acknowledged the condition. Dr. Coe testified at deposition that it would not be surprising that debtor suffered from sleep apnea because of his size and obesity.[18] The debtor also suffers from hypertension, and is currently taking medication to treat the condition.[19] These physical problems all hinder the debtor's ability to continue in his present employment as a truck driver, and pose an obstacle to future employment in other lines of work.

The debtor also suffers from bipolar disorder, which inhibits his ability to work at the higher paid occupations for which he has educational training. This condition was first noticed in childhood, and has continued throughout Mr. McMullin's adult

---

11. *Gerhardt*, 348 F.3d at 92, *citing In re Roach*, 288 B.R. 437, 445 (Bankr.E.D.La. 2003).

12. *Id.*

13. *Id.* at 92.

14. *Id.*, *quoting In re Faish*, 72 F.3d 298, 307 (3rd Cir.1995)

15. Exhibit 12.

16. Exhibit 9.

17. Exhibit 8.

18. Exhibit 8, Deposition Dr. Alan Jason Coe, at pg. 21.

19. Exhibit 13, pg. 220.

life.[20] The debtor has been hospitalized twice due to psychiatric problems. The debtor's physician has testified that his psychiatric prognosis is "fair at best."[21] The debtor testified that, because of his psychiatric problems, he has been unable in the past to hold a job that requires that he work with other people. Dr. Coe, the debtor's psychiatrist, confirms that the debtor's bipolar problems will make it unlikely that he will be able to hold a job requiring that he deal with people.[22] The evidence at trial was that the debtor has held at least 33 jobs between 1978 and 1991, when he qualified for social security disability due to his mental condition.[23] He testified that a great majority of the time, his employment was terminated because he was depressed and could not get along with people.

The defendants challenge the debtor's assertion that he is unable to work with people, citing discrepancies between the debtor's testimony and the stated reason on job applications for leaving employment. The court finds, however, that inconsistencies in the job applications are minimal and have been adequately explained by the debtor. The failure to state on a job application that the debtor has psychiatric problems that make it difficult to work with people is understandable.

This case also differs from *Gerhardt* in that the debtor is unlikely to obtain additional steady employment in either his field of training or in a field other than trucking. While Mr. McMullin holds a master's degree in organizational management, he has not been employed in the field since graduation, despite having recently applied for jobs in the area. Instead, his recent applications have been met with the criticism that his training is now too old to allow employment in the field.

Mr. McMullin testified that since 1996 he has been employed as a truck driver, and has had eleven jobs as a truck driver in the last eight years. While the debtor enjoys the highest income of his career as a truck driver, he testified that he does not believe that he will be able to continue in this field because of his degenerative disc problems, which presently require use of a brace and a cane for walking. He testified that in 2003, he required six periods off ranging from several days to a month, because of medical problems.

The defendant's expert, Dr. Larry S. Stokes conducted a vocational assessment of the debtor, in order to form an opinion regarding his employability and wage earning capacity.[24] While Dr. Stokes notes that the debtor is currently gainfully employed, he states that his ability to continue employment is "guarded" due to the debtor's significant medical problems.[25] Dr. Stokes' report stated that, based upon past work experience, the debtor should be able to return to work in other fields, should his physical and mental capabilities permit, including bookkeeper, telemarketer, manager, cashier and expediter. Each of these jobs requires the debtor to deal with people, a task he has demonstrated an incapacity for in the past.

■ The defendants assert that no evidence has been produced that Mr. McMullin's physical and mental problems have

---

20. Exhibit 8.

21. Exhibit 8.

22. Exhibit 8; Deposition Dr. Coe, at pg. 24.

23. Exhibit 10. The debtor received social security disability payments for approximately six years.

24. Exhibit 13.

25. *Id.* at pg. 220.

resulted in a permanent disability. Case law, however, does not require permanent medical disability as a prerequisite to discharge of a student loan.[26] For example, in the case of *Educational Credit Management Corp. v. Polleys*, the debtor stipulated that she "has no medical or physical condition that prevents her from retaining work."[27] The court held that while a permanent medical condition will certainly contribute to the debtor's inability to repay a loan, it is not necessary if "the debtor's situation is already bleak."[28]

Unlike *Gerhardt*, this is not a case where the debtor has chosen to work solely in his area of training at a low-paying job. Mr. McMullin's financial distress is not self-imposed; instead, he has actively sought employment in a number of areas. He currently works in an area not related to his degrees, but that has provided the highest pay received in his career,[29] and the highest pay he is likely to receive even if he could be employed in others areas in which he is qualified. Given the debtor's physical and mental infirmities, the debtor has met his burden of proving a total incapacity in the future to pay his student debts, for reasons not within his control. The debtor suffers from obesity, hypertension, bi-polar disease, degenerative disc disease and sleep apnea. The debtor's physical prognosis is poor, and his condition will not improve in the future. The debtor has testified that his medical conditions have worsened, and that he will soon be forced to cease driving trucks entirely. If so, he will lose the only form of employment at which he has demonstrated an ability to perform for any extended period, and which has provided him with the greatest income of his career. Even with his truck driving income, the debtor is unable to repay the loans and maintain a minimal standard of living. Without the income, he is utterly unable to pay the debt. For the foregoing reasons, the court holds that the debtor has proved the second prong of the *Brunner* analysis.

### C. Good faith of the debtor.

The last requirement in the undue hardship analysis is that the debtor has made good faith efforts to repay the loans. "Good faith" may be shown by the debtor's "efforts to obtain employment, maximize income and minimize expenses."[30] It also "encompasses a notion that the debtor may not willfully or negligently cause his own default, but rather his condition must result from 'factors beyond his reasonable control.'"[31] Stated another way, the debtor must not be "attempting to abuse the student loan system by having loans forgiven before embarking on a lucrative career in the private sector."[32]

In this case, the debtor has made numerous efforts to maximize his income. He has sought to obtain employment in the

---

26. *Educational Credit Management Corp. v. Polleys*, 356 F.3d 1302, 1311 (10th Cir.2004).

27. *Id.*

28. *Id.*(debtor, a 45–year old single mother, suffering from debilitating emotional problems which were out of her control and living in rental property owned by her parents, discharged from student loans).

29. Exhibits 2, 10, 11.

30. *In re Roberson*, 999 F.2d 1132, 1136 (7th Cir.1993); *see Educational Credit Management Corp. v. Polleys*, 356 F.3d 1302, 1312 (10th Cir.2004).

31. *Roberson*, 999 F.2d at 1136, *quoting* Comm'n on the Bankruptcy Laws of the United States, Report, H.R. Doc. No. 137, 93d Cong., 1st Sess, Pt. II at 140 n. 16.

32. *Polleys*, 356 F.3d at 1312, *quoting In re Cheesman*, 25 F.3d 356, 360 (6th Cir.1994).

field of organizational behavior, for which he is trained. In the last few years, debtor has applied for jobs in the field, and been told that his degree is now too old to allow employment. He has never successfully been employed in the field, despite having applied for jobs in the area. Moreover, the debtor has made numerous attempts to be employed in a wide range of occupations, holding over 33 jobs during his career. Due to medical and psychiatric conditions, the debtor has been unable to retain jobs requiring either physical stamina or the ability to deal with people. The jobs held in the past also provided only minimal income, insufficient to permit the debtor to maintain his living standard and pay the student loans.[33] The debtor has had some recent success as a truck driver; however, this occupation does not provide sufficient income to permit the debtor to make loan payments as required by the defendants, and places physical demands on the debtor that are increasingly difficult to maintain.[34]

Mr. McMullin has attempted to seek a discharge more than a decade after the loans were incurred, and not immediately upon graduation. Mr. McMullin has actively minimized his household expenses, keeping the expenses to a minimum. While the food expense is high, Mr. McMullin has presented credible evidence that he is obese, has attempted a gastric bypass which has resulted in the need for additional nutrients, and because of his employment as a truck driver, is forced to consume meals at expensive truck stops. At the same time, Mr. McMullin has at-tempted to maximize his professional resources, seeking various employment opportunities that will permit him to work with his physical and mental infirmities, and at the largest income possible. The debtor's ability to receive better or higher paying jobs is limited by his physical and mental condition, which is beyond his control.

The debtor's requests for a deferment or forbearance constitutes another indication of the debtor's good faith.[35] Unlike in *Brunner*, the debtor did not seek a discharge soon after the loans became due, and without first requesting a deferment of payment. The debtor has several times requested that he receive a deferment on the loans. The debtor requested three deferments on the DEOD loans, and five deferments of the ECMC loans.[36] Most of the deferments were while the debtor was a full time student; one was requested while the debtor was on Social Security disability.

The DOED asserts that it has made numerous offers of repayment options, none of which the debtor has accepted, and the debtor's failure to enter into a repayment plan precludes a finding of good faith. The repayment plans proposed by the DOED have initial monthly payments ranging from $293.30 to $926.71, with varying interest rates and with the length of repayment varying from ten to thirty years. The defendants argue that the reasonable and affordable payment option would reduce the DOED debt to

---

**33.** Prior to 1997, the highest income earned by the debtor in any given year was $16,576.00. Exhibit 11.

**34.** The court, observing how much difficulty debtor had in getting into the witness stand, a height of seven to eight inches from the floor, can only wonder how debtor manages to get into the cab of the large trucks he is driving.

**35.** *In re Shankwiler*, 208 B.R. 701, 708 (Bankr.C.D.Cal.1997)(debtor made loan payments and requested a forbearance for six years and minimized expenses, found in good faith).

**36.** Pl. 32, Joint Pretrial Order, at 11 and 24.

$40,000.00, with monthly payments of $75.00 and that the debtor could easily afford this if he would cut his monthly food expenses to $900.00. There are several problems with this argument. First, the court doubts that the debtor could cut his monthly food expenses by one-half so long as he continues to drive a truck. Second, this option covers only a portion of the total student loan debt owed, and does not include the ECMC indebtedness, which comprises over one-third of the total student debt. Finally, upon default, the entire original balance of the loan would be reinstated, leaving the debtor in the same or worse financial straits than those where he now finds himself.

The debtor paints a different picture than the DOED, and contends that he attempted to negotiate repayments in 1996 and requested administrative relief from paying loans, but was informed that the entire loan must be repaid.[37] He testified that he could not obtain an additional deferment because the request was made when the loan was one month past due. The DOED's witness verified that once a loan is in default, a deferment cannot be granted.

 The debtor's failure to seek out alternative payment plans does not bar a finding of good faith.[38] The record reflects that letters were forwarded by the DOED offering repayment plans, and the last one was sent in 1994.[39] In 1998, letters were sent informing the debtor that the loan was assigned for collection, and which informed debtor that a loan consolidation was possible, but did not describe a consolidation plan.[40] The repayment letters apparently went to an old address, and were not delivered.[41] The letters were also sent during a time that the debtor was receiving Social Security disability payments, the debtor was not regularly employed and unable to make payments. The evidence does not reflect that the debtor was actually informed of repayment options, and the debtor testified that his attempt to contact the lenders for repayment options was unsuccessful. The court finds that the debtor's testimony to be credible, and that good faith is present.

Cases cited by DOED do not support its assertion that good faith cannot be found where repayment options have not been used, and are distinguishable. Notably, the Douglass and Healey cases involved healthy debtors who filed for bankruptcy soon after graduation.[42] In Pace and Swinney, the debtor failed to provide corroborating evidence of alleged medical conditions to support undue hardship.[43] A failure to maximize income was significant in the McLeod and England cases.[44]

37. Exhibit 7, Bates No. 121. See also Exhibit 114.8 and 114.32.

38. In re Carlson, 273 B.R. 481, 486 (Bankr.S.C.2001)(debtor need not seek out every possible alternative payment plan to demonstrate good faith).

39. Exhibit 114.1 through 114.22. A "NO3" or "NO7" code in the "letter type" column designates a repayment letter.

40. Exhibit 114.32.

41. Exhibit 114.21—114.22. The repayment letters are designated with a "NO3" designation. The Department of Education witness testified that a "U" indicated a letter was undeliverable, and that several letters sent bear this designation.

42. In re Douglass, 237 B.R. 652, 654 (Bankr. N.D.Ohio 1999); In re Healey, 161 B.R. 389 (E.D.Mich.1993).

43. In re Swinney, 266 B.R. 800 (Bankr. N.D.Ohio 2001); In re Pace, 288 B.R. 788 (Bankr.S.D.Ohio 2003).

44. In re McLeod, 176 B.R. 455 (Bankr. N.D.Ohio 1994)(debtor had not sold house or obtained rental income); In re England, 264 B.R. 38 (Bankr.D.Idaho 2001)(failure to use

 The defendants also assert that good faith is not present because the debtor has made no voluntary payments on his student loans; however, through wage and other garnishments, he has paid $6,571.03 on loans guaranteed by the California Student Aid Commission and paid $928.34 on the DOED loans. Case law provides that there is no *per se* requirement that the debtor pay a certain percentage or minimum amount of the student loans in order to be found in good faith,[45] and the failure to make a payment, standing alone, does not establish a lack of good faith.[46] Instead, the debtor's good faith is "interpreted in light of his ability to pay" and a failure to pay does not prevent a finding of good faith if the debtor "never had the resources to make payments." [47]

Based on the circumstances of the case, the court finds that the debtor has acted in good faith. The debtor's loans were deferred while he was a full time student. The debtor suffered a disc injury right after graduation, and was on state disability for a period after the disc rupture. Commencing in 1991 and continuing for the next several years, the debtor was on Social Security disability due to his bipolar condition.[48] Debtor testified that he was homeless for approximately one year in 1992, because he was unable to work and disability payments were slow in commencing. In the period between graduation

and while on disability, the debtor earned no more than $16,576.00 in any given year.[49] Prior to 1997, the debtor had obtained a deferment or was on disability and generally was unable to make payments on the loans.[50]

In 1997, the debtor starting working as a truck driver, and has earned an adjusted gross income of between $25,454.00 and $38,459.00 between 1999 and 2002.[51] The court finds debtor's testimony to be credible that he attempted to either request an additional deferment or make arrangements to pay, but these efforts failed to result in a payment plan that he could afford. The debtor does not lead a lavish lifestyle. He has minimal expenses, and has pursued the best employment option available to him, yet lacks the ability to make payments on the loans. Given the debtor's physical and mental conditions, it is highly unlikely that the debtor will ever have sufficient resources to make payments on the loans while maintaining a minimal standard of living.

For the foregoing reasons, the court will enter an order granting judgment in favor of the debtor, and discharging the student loans with the defendants. An appropriate judgment will be entered.

## JUDGMENT

For the reasons assigned in the foregoing memorandum opinion issued this date,

settlement proceeds to pay loans and wife's failure to seek employment, in addition to failure to explore repayment programs, precluded good faith).

45. *In re Coats*, 214 B.R. 397, 405 (Bankr.N.D.Okla.1997)(debtor made one voluntary payment of $100 on loan, good faith found because no funds available to make payment); *In re Lebovits*, 223 B.R. 265, 274 (Bankr.E.D.N.Y.1998)(debtor made three payments on loan, found in good faith because of inability to pay loans)(and cases therein).

46. *Polleys*, 356 F.3d at 1311 (debtor who had not made a single payment on loan found in good faith).

47. *Lebovits*, 223 B.R. at 274 (and cases cited therein).

48. Exhibit 12.

49. Exhibit 11.

50. Exhibit 11; 12.

51. Exhibit 2.

IT IS ORDERED, ADJUDGED AND DECREED that judgment is entered in favor of debtor/plaintiff Dennis F. McMullin, and against the defendants, United States Department of Education and Educational Credit Management Corporation.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the student loans owed by Dennis F. McMullin to the United States Department of Education and Educational Credit Management Corporation are DISCHARGED under 11 U.S.C. § 523(a)(8).